PARKS et al. v. SUTTON, State Treasurer.

No. 3769. Decided June 10, 1922. Rehearing denied July 5, 1922.
(208 Pac. 511.)

1. TAXATION—ESTATE PAYING INHERITANCE TAX NOT LIABLE FOR PER DIEM OF APPRAISERS. Under Comp. Laws 1917, § 3188, providing for a salary for inheritance tax appraisers to be paid out of the state treasury, and forbidding their taking any fee from the taxpayer, section 3210, as amended by Laws 1919, c. 64, providing that, where property is subject to inheritance tax, all costs of the proceedings had for determining whether the property is subject to the tax shall be chargeable to the

estate, section 3198, declaring that the Attorney General is ex officio collector of all inheritance taxes and expressly defining his duties, and section 3187, providing for the appointment by the county court of appraisers, and requiring them to take an oath to perform the duties of their office, in effect making the appraisers public officers, an estate is not chargeable with the payment of the per diem and expenses of the appraisers.

2. TAXATION—NO CONDITIONS AS TO INHERITANCE TAX IMPOSED EXCEPT WHERE THEY APPEAR EXPRESSLY IN STATUTE OR BY REASONABLE IMPLICATION. Any condition governing the transfer of property by inheritance or imposing a tax therefor should be found from the reading of the statute either express or reasonably implied.

3. STATUTES—STATUTORY RULE FOR CONSTRUCTION APPLIED AND FOLLOWED IN ALL CASES. The rule of Comp. Laws 1917, § 5847, for construing statutes, that words and phrases are construed according to the context and the approved usage of the language, but technical phrases and such others as have acquired a peculiar and appropriate meaning in law are to be construed as to such peculiar and appropriate meaning or definition, is applied and followed in all cases.

4. COSTS—"COSTS" AND "FEES" HELD DISTINGUISHABLE. "Costs" and "fees" are readily distinguishable, and each has an appropriate and peculiar meaning in law (citing 3 Words and Phrases, First Series, Fees).

FRICK and THURMAN, JJ., dissenting.

Appeal from District Court, Third District, Salt Lake County; *G. A. Iverson,* Judge.

Suit by George W. Parks and another against W. D. Sutton, Treasurer of the State of Utah. From judgment dismissing plaintiffs' petition, plaintiffs appeal.

JUDGMENT VACATED AND SET ASIDE.

*Ray & Rawlins,* of Salt Lake City, for appellants.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

CORFMAN, C. J.

Plaintiffs applied for a writ of mandamus in the district court of Salt Lake county to compel defendant, as the Treasurer of the state of Utah, to issue and deliver to them, as administrators of the estate of Enos A. Wall, deceased, a receipt for payment of an inheritance tax paid on account of said estate. The plaintiffs' petition, in substance, sets forth that said Enos A. Wall died in Salt Lake county June 20, 1920, leaving property subject to an inheritance tax; that thereafter the district court of Salt Lake county duly appointed plaintiffs administrators of said estate, and that they qualified and entered upon the discharge of their trust; that in August, 1920, they filed in said court a detailed report as required by Comp. Laws Utah 1917, § 3204, as amended by chapter 9, Laws Utah 1919, which said report contained a true inventory of all the property belonging to the estate of said deceased upon which an inheritance tax should be paid to the state of Utah; that thereafter appraisers duly appointed and commissioned by the said court appraised all the property of said estate subject to an inheritance tax as provided for by Comp. Laws Utah 1917, § 3190, as amended by chapter 64, Laws Utah 1919; that since said appraisement said appraisers were paid $300, their compensation, out of the treasury of Utah for their services rendered in making said appraisement as provided by Comp. Laws Utah 1917, § 3188; that thereafter the said court, by its order duly made and entered, fixed the amount of the inheritance tax to be paid by petitioners, as the administrators of said estate, to the state of Utah, and that the same has been paid to the defendant, State Treasurer, as required by said court's order, and that petitioners have demanded of the defendant, as Treasurer, receipt therefor. It is then alleged that the Attorney General of the state of Utah, in behalf of the State Treasurer, filed with the petitioners a bill for $300, the same being the amount so paid out of the state treasury for the compensation of said appraisers, claiming the same to be due and payable by petitioners to the State Treasurer under the provisions of

Comp. Laws Utah 1917, § 3210, as amended by chapter 64, Laws Utah 1919, as costs of said proceeding to be taxed against the estate of said deceased; that the defendant, as said State Treasurer, thereafter refused to issue and deliver to petitioners a receipt for the inheritance tax so paid by them on account of said estate unless payment be made to him of the $300 so paid out of the state treasury as compensation to said appraisers, which plaintiffs have refused to do. It is further alleged that the petitioners, as administrators of said estate, will be unable to close up its affairs and distribute the property of said estate to the heirs and persons entitled thereto until a State Treasurer's receipt is obtained for the payment of said inheritance tax, and that petitioners have no plain, speedy, or adequate remedy in the ordinary course of law. Petitioners prayed for a writ of mandamus compelling the defendant, as State Treasurer, to deliver to them a receipt for the inheritance tax so paid by them. The district court let an alternative writ issue, and thereupon the defendant, as State Treasurer, appeared and demurred to plaintiff's petition upon the ground that it did not state facts sufficient to constitute a cause of action. Said demurrer was sustained by the district court, and thereupon the court made and entered its order for judgment, after plaintiffs' refusal to amend, dismissing their petition. Plaintiffs appeal.

Plaintiffs assign as error the court's order sustaining defendant's demurrer to their petition and the dismissal of their petition. The only question therefore to be determined on this appeal is whether, under our inheritance tax laws, the per diem and expenses of the appraisers appointed by the district court to appraise the estates of decedents subject to inheritance taxes are to be borne by the estates or by the state. This question requires an interpretation of our inheritance tax laws, particularly Comp. Laws Utah 1917, §§ 3188 and 3210.

Section 3188 provides:

"Appraisers shall receive $5 per diem for actual services and such necessary expenses incurred in the performance of their duties as may be allowed by the court appointing the same, to be paid out of the state treasury as other state officers are paid. Any appraiser

appointed under this title who shall take any fee or reward from an executor, administrator, trustee, legatee, next of kin, or heir of any decedent, or from any other person liable to pay said tax or any portion thereof, shall be guilty of a misdemeanor."

Section 3210, as amended by chapter 64 Laws Utah 1919, reads as follows:

"In all cases where any property so passes as to be liable to taxation under the inheritance law, all costs of the proceedings had for determining the amount of such tax or for determining whether the property of the entire estate is sufficient in amount as to render that part passing to heirs subject to the tax, shall be chargeable to such estate, and to discharge the lien upon such property all costs, as well as the taxes, must be paid. In all other cases the costs are to be paid as ordered by the court, and when a decision adverse to the state has been rendered, with an order that the state pay the costs, it is the duty of the clerk of the court in which such action was pending to certify the amount of such costs to the Attorney General, who shall, if said costs are correctly certified, and the case has been finally terminated, present the claim to the State Board of Examiners, to audit, and, said claim being allowed by said board, the State Auditor is directed to issue a warrant on the Attorney General in payment of such costs."

It is claimed that there is an apparent conflict in the foregoing sections. We do not think so. Section 3188, supra, limits and fixes the per diem for actual services rendered by appraisers while in the performance of their duties, as the state's agents or officers, while rendering a purely public service, and said section also provides that said per diem and such necessary expenses incurred by the appraisers in the performance of their duties as may be allowed by the court appointing them are to be paid out of the state treasury as other state officials are to be paid; while section 3210 provides that in all cases where any property passes which is subject to taxation by reason of our inheritance tax laws all costs of the proceedings had for determining the amount of the tax or for determining whether the entire property of the estate is of sufficient amount as to render a part passing to heirs subject to the tax shall be chargeable to such estate.

Our Legislature passed an inheritance tax law as early as 1901 chapter 62, Laws Utah 1901). That act contained no provision as to whether the state or estate is chargeable with

the fees and expenses of making an appraisement. It simply provided that the executor, administrator, or trustee of the deceased person should, immediately upon his appointment, file an inventory of the property liable to be taxed, and that it became the duty of such executor, administrator, or trustee to collect the tax. The Legislature of 1905 repealed chapter 62, Laws Utah 1901, and enacted chapter 119, Laws Utah 1905, which provided for the appointment of appraisers in inheritance tax cases. Said act of 1905 also contained a provision (section 26) for the payment of costs of the proceedings in practically the same manner as is now provided for by section 3210. In 1915, without amending or repealing section 26 (3210) of the act of 1905, the Legislature, for the first time, enacted section 1220x3 of chapter 28, Laws Utah 1915, which is identical with section 3188, supra, providing for the payment of the per diem and expenses of the appraisers out of the state treasury. Both of these sections were carried forward without change to the Comp. Laws Utah 1917. In 1919 the Legislature, without amending or repealing section 3188 (1220x3), re-enacted section 3210, supra.

It is quite evident from the history of the enactment of the sections under consideration that it was the intention of the Legislature that both of them should stand, so neither of said sections may now be consistently held repealed by implication. Neither the plaintiffs nor the Attorney General makes the contention that either of said sections was so repealed. The Attorney General contends that the expression "all costs of the proceedings" within the meaning of section 3210 includes appraisers' per diem and expenses in all cases where property passes subject to the payment of a tax under our inheritance tax laws; that the estates are legally chargeable therewith notwithstanding it is provided by section 3188 that their per diem and expenses are "to be paid out of the state treasury as other officers are paid." On the other hand, plaintiffs' counsel contend that section 3210 has nothing whatever to do with the payment of appraisers' compensation or per diem, but that the word "costs," as used in said section, means the usual costs that attend a civil pro-

ceeding as provided by chapter 4 of our Code of Civil Procedure, and that such costs should not be held to include appraisers' per diem and expenses while discharging a public duty.

The discussion on the part of the respective parties has taken a wide range, particularly with respect to what may have been the purposes of the Legislature in the enactment of section 3188. The Attorney General argues that the purpose of this section was merely to fix the per diem of the appraisers and to afford a convenient and expeditious method whereby they could obtain their per diem and expenses after services have been rendered by them, and that ultimately the estate should reimburse the state for the amount paid out by the State Treasurer to the appraisers. Of necessity, then, he must contend that the provision of section 3210 applies, and that estates are chargeable with the appraisers' per diem and expenses, and that such are included in the term "all costs," as that expression is used in connection with "proceedings had for determining the amount of such tax," etc. Plaintiffs contend that the two sections under consideration have no connection with each other, more especially with respect to the "per diem" and "expenses" of appraisers and "costs" as those words were intended to be used by the Legislature. In other words, that the expression "all costs of the proceedings," as appears in section 3210, does not mean or include the compensation or per liem and necessary expenses of appraisers provided for in section 3188, but that those words refer to separate and wholly independent matters.

We have heretofore referred, somewhat in detail, to the history of the legislation leading up to our present inheritance law tax. It has been seen that provisions similar to those contained in section 3210 have been a part of our statutes since 1905, long before the enactment of section 3188. In this connection it is to be noticed that section 3210 was amended as late as 1919, but that nowhere under our inheritance tax law since the first enactment in 1901 has it ever been made the duty of the Attorney General to present a claim against an estate subject to an inheritance

tax for appraisers' per diem or their expenses. While under section 3198, Laws Utah 1919, the Attorney General is expressly declared to be ex officio the collector of all inheritance taxes arising under the laws of the state, and in that regard his duties have been expressly defined in that and other sections of the act, it is significant to note that nowhere is the Attorney General or any other officer expressly charged, if at all, with the duty of collecting the per diem and expenses of appraisers from the estates subject to a tax.

Of course, an inheritance tax, strictly speaking, is not a tax on property, but is based on the principle that the right to take property by devise or descent is not a natural right, but one permitted by authority of law only. It therefore follows that the right to impose conditions upon the transfer of or succession to property belonging to the estates of decedents may be rightfully imposed by statute. Nevertheless any conditions governing the transfer, or imposing a tax therefor, should be found from a reading of the statute either expressed or reasonably implied. The right of succession or the taking of property of deceased persons, is a valuable right universally granted and recognized under the law from time immemorial . While conditions are frequently imposed in the way of a tax upon the transfer of such property, nevertheless any condition sought to be imposed must be based on some provision of the law authorizing it. If the conditions are not clearly expressed or may not be reasonably implied, then no valid ground exists for imposing them. Ordinarily, when a section of a statute treats of some particular matter or thing in plain and unambiguous language without        2 qualification or reference to some other section, we seek no further for legislative intent or expression on that particular subject. Then again we think the manner in which the appraisers are chosen or appointed has an important bearing on the question involved.

Comp. Laws Utah 1917, § 3187, provides:

"In each county the court shall annually appoint three competent residents and freeholders of said county to act as appraisers of all property within its jurisdiction which is charged or sought to be charged with an inheritance tax.   *   *   *   Said appraisers shall

serve for one year and until their successors are appointed and qualified. *They shall each take an oath to faithfully and impartially perform the duties of the office* but shall not be required to give bond." (Italics ours.)

To all intents and purposes these appraisers are public officers appointed to perform and discharge a public duty. Section 3188 fixes their per diem or compensation for actual services rendered by them on behalf of the public. What good reason, then, can be assigned why the state should not pay for public services? Are not officers, for services rendered by them in the interest of the public, generally paid out of public funds, and the state's interest thereby better subserved? Presumably the Legislature took the common sense view that appraisers of estates of deceased persons, under the inheritance tax law, should be as far removed from private interests and influences as possible when, by section 3188, it was provided their compensation for actual services and such necessary expenses incurred in the performance of strictly public duties shall "be paid out of the state treasury as other state officers are paid." Manifestly we think this provision of the statute providing for the payment of this particular service out of the state treasury was reasonable, just, and sound, and that the Legislature meant no more nor any less than is there said. Not only that, but the Legislature emphasized the importance of its purposes by providing in the same section that—

"Any appraiser appointed under this title [compensation of appraisers] who shall take any fee or reward from any executor, administrator, trustee, legatee, next of kin, or heir of any decedent, or from any other person liable to pay said tax or any portion thereof, shall be guilty of a misdemeanor."

By what process of reasoning, then, may the courts arrive at the conclusion that the provisions referred to were merely intended to afford a ready and convenient method of paying for the services of appraisers and that ultimately it becomes the duty of the Attorney General to collect for such services from the estates?

Comp. Laws Utah 1917, § 5847, as one of our rules for the construction of statutes, provides:

"Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined by statute, are to be construed according to such peculiar and appropriate meaning or definition."

The rule above stated is one of so universal application and so generally followed by the decisions of all courts that we need not cite cases.

The sections of our statutes now under consideration are in their provisions absolutely plain and unambiguous. They do not conflict. Construing section 3210 according to the context, that section deals with "costs against an estate." Not a word is said in that section from beginning to end concerning appraisers, their duties, fees, or compensation. The manner of their appointment, qualification, and the service rendered by them to the state are no part of the proceedings in any particular case or probate matter.

Costs and fees are readily distinguishable, and each has "a peculiar and appropriate meaning in law." Many cases are cited in 3 Words and Phrases, First Series, p. 2714, to that effect. By way of illustration we may cite one case, *Tillman* v. *Wood,* 58 Ala. 578, wherein it is said:

"Costs and fees were originally altogether different in their nature. One is an allowance to a party for expenses incurred in prosecuting or defending a suit; the other, a compensation to an officer for services rendered in the progress of the cause. * * * There is in our statute a manifest difference between costs and fees in another respect. Costs are an allowance to a party for the expenses incurred in prosecuting or defending a suit and incident to the judgment; while fees are compensation to public officers for services rendered individuals not in the course of litigation."

True, in the litigation of matters before a court, it is sometimes provided by statute that the fees of public officers for services rendered may be taxed or charged against a party, but such charges are not permissible unless expressly so authorized.

It is absolutely certain that there is no express authorization in section 3210, upon which the Attorney General relies

in this case, to tax the per diem and expenses of appraisers to the estates, but, to the contrary, our Legislature has expressly provided that their per diem for actual services and such necessary expenses incurred in the performance of their duties shall be paid out of the state treasury as other officers are paid. The court has nothing to do with the fixing of their per diem, nor does the court appoint them in the course of the proceedings of any particular estate to act for that estate. They are called upon to discharge their duties as the state's agents or officials precisely as is the Attorney General or any other public officer who has a public duty to perform. Why, then, impose the duty of paying them on the taxpayer, in this instance on the Wall estate, which has already paid into the state treasury, as our inheritance law directs, $67,010.91. If there be any doubt about the intention of the Legislature, after reading the plain provisions of section 3188, it should be kept in mind that in all cases of doubt the law favors the taxpayer.

We are clearly of the opinion that the Attorney General's act in demanding of the estate in question that the state be reimbursed was wholly unauthorized by law; that the State Treasurer should be required to receipt the plaintiffs for the inheritance tax paid, as applied for in this case.

It is therefore ordered that the judgment of the district court dismissing plaintiffs' petition on demurrer be, and the same is hereby vacated and set aside. Costs to plaintiffs.

GIDEON, J., concurs.

WEBER, J. (concurring). In 1901 the Legislature of this state enacted an inheritance tax law. In 1905 the law was amended and enlarged. Among the additions was what is now section 3210, Comp. Laws Utah 1917. Section 3210 then provided and now provides that, when any property is liable to inheritance taxes, all the costs of proceedings had for determining the amount of such tax and for determining whether the property of the entire estate is sufficient in amount as to render that part passing to heirs subject to

the tax, "shall be chargeable to such estate, and to discharge the lien upon the property all costs, as well as the taxes, must be paid." What are the proceedings for determining the amount of the tax? All the appraisers do is to appraise the property, and when the appraisement is returned it devolves upon the court to determine whether the estate is liable to the tax. It is the court that determines the amount of the deductible debts and charges and decides the question of whether a tax is due, and how much. But the law of 1905 had another provision which is an aid in ascertaining the meaning at that time of what is now section 3210. The debts which it was the duty of the court to deduct from the appraised valuation then, in addition to debts owing by decedent at the time of his death, the local and state taxes due from the estate prior to his death, a reasonable sum for funeral expenses and court costs, also included "the cost of appraisement made for the purpose of assessing the inheritance tax." Taking into consideration the fact that the costs of appraisement were deductible the same as court costs, it may be argued with some cogency that the appraisers' fees were at that time payable, not by the state, but by the estate liable to taxation. Unless thus payable by the estate, it would not be fair and equitable to deduct therefrom the costs of appraisement.

In 1915 the law was again amended. What is now section 3210 was not changed, but in the section defining the deductible debts the words "the cost of appraisement made for the purpose of assessing the inheritance tax" were eliminated. Was this provision omitted without a purpose? Was it mere surplusage? I think not. It seems to me that the answer to the question why the provision relating to the deduction of the costs of appraisement was expunged is contained in section 1220x3, Laws Utah 1915 (section 3188, Comp. Laws 1917), which says:

"Appraisers shall receive $5 per diem for actual services and such necessary expenses incurred in the performance of their duties as may be allowed by the court appointing the same, to be paid out of the state treasury as other state officers are paid. * * *"

The appraisers being paid by the state, no reason remains

for any deduction of such expenses from the amount of the appraisement. The state paying the charge of appraisement, it would be unfair to deduct that expense from the appraised value.

But it is urged that the payment of the appraisers by the state is only for the purpose of designating the manner of payment, and that the legislative intent is that, when an estate is liable for the tax, the state shall recoup what it has paid from the taxable estate. If the Legislature intended that such payment by the state should be merely a matter of form or manner of payment, and that the state should pay in the first instance and the taxable estate be ultimately liable for these charges, why did it not say so? Why all this circumlocution? Why were not the courts directed to order the charges paid out of the estate upon determination of its liability? If this was intended, "it would have been easy to say so." Another reason why appraisers' charges are not intended by the statute to be paid by the estate is that the compensation of appraisers is not in the nature of either fees or costs. The law says that—

"Appraisers shall receive $5.00 per diem for actual services * * * to be paid out of the State Treasury as other State officers are paid."

This is equivalent to saying that, while performing their duties, the appraisers shall receive a daily wage of $5, not a fee of $5 for each appraisement.

"Fees are compensations for particular acts or services, as the fees of clerks, sheriffs, lawyers, physicians, etc. Wages are the compensation paid, or to be paid, for services by the day, week, etc., as of laborers, commissioners, etc. Salaries are the per annum compensation to men in official and some other situations." *Seiler* v. *State ex rel.*, 160 Ind. 619, 65 N. E. 927.

Were the appraisers paid salaries, as they are in some states, would a pro rata share of these salaries be collected from taxable estates as part of the costs provided for in section 3210, supra? Does it make any difference in principle whether the compensation received by the appraisers is called a per diem, wages, or salary? In either case it is not in the

nature of the costs mentioned in the section of the law relied upon by respondent.

I concur in the conclusion reached by Mr. Chief Justice CORFMAN.

FRICK, J. (dissenting). I am unable to concur either in the reasoning or conclusions of the majority of the court. As I read sections 3188 and 3210, which are the ones in question here, no difficulty whatever exists in giving all of their provisions full scope and effect. In view, however, that a difference has arisen among the members of this court respecting the true intent and meaning of the provisions of those sections, I shall give a brief history of both sections in order to afford the reader a better understanding of the purpose of the Legislature in adopting them, and shall, as briefly as I can, give my reasons for my conclusions.

Our inheritance tax law was first adopted in 1901 (Laws Utah 1901, c. 62). As then adopted, the law was more or less crude and imperfect. In that act no provision was made for special appraisers, but the appraisement was made under the general probate statute. That condition remained for quite a number of years. In Laws Utah 1903, c. 95, a few unimportant amendments were made, but still no special appraisers were provided for. In 1905, however (Laws Utah 1905, c. 119), chapters 62 and 95 aforesaid were repealed, and the inheritance tax law much improved and enlarged. While in the 1905 act as amended special appraisers were provided for, yet no special compensation for services was fixed. In that act, however, for the first time, special provision was made for the payment of costs. See section 26 of that act, which reads as follows:

"In all cases where any property so passes as to be liable to taxation under the inheritance law, all costs of the proceedings had for determining the amount of such tax or for determining whether the property of the entire estate is sufficient in amount as to render that part passing to heirs subject to the tax, shall be chargeable to such estate, and to discharge the lien upon such property all costs, as well as the taxes must be paid. In all other cases the costs are to be paid as ordered by the court, and when a decision adverse to the state has been rendered, with an order

that the state pay the costs, it is the duty of the clerk of the court in which such action was pending to certify the amount of such costs to the State Treasurer who shall, if said costs be correctly certified, and the case has' been finally terminated, present the claim to the State Board of Examiners, to audit, and, said claim being allowed by said board, the State Auditor is directed to issue a warrant on the State Treasurer in payment of such costs."

That section was subsequently carried forward into Comp. Laws Utah 1907 as section 1220x25. In 1915 (Laws Utah 1915, c. 28) section 1220x1, with other sections of the inheritance tax law as the same had been carried into Comp. Laws Utah 1907, was amended. In that act special provision was made for the first time for the payment of compensation to the inheritance tax appraisers. The provision was made as now found in Comp. Laws Utah 1917 as section 3188, which reads as follows:

"Appraisers shall receive $5 per diem for actual services and such necessary expenses incurred in the performance of their duties as may be allowed by the court appointing the same, to be paid out of the state treasury as other state officers are paid. Any appraiser appointed under this title who shall take any fee or reward from any executor, administrator, trustee, legatee, next of kin, or heir of any decedent, or from any other person liable to pay said tax or any portion thereof, shall be guilty of a misdemeanor."

In the act of 1915, however, wherein section 3188 appears for the first time, section 26 of chapter 119, Laws Utah 1905, which constituted section 1220x25 of Comp. Laws Utah 1907, was re-enacted in the terms as adopted in chapter 119 aforesaid. The law as it was left by chapter 119 was carried into Comp. Laws Utah 1917, in which the section providing for compensation is designated as section 3188, supra, and section 26 of chapter 119, Laws Utah 1905, constitutes section 3210, which I have already set forth in full.

In chapter 64, Laws Utah 1919, a large number of sections as found in Comp. Laws Utah 1907 were amended, but section 3210, being the same as section 26 of chapter 119 of Laws Utah 1905, was re-enacted, while section 3188 was omitted.

It will thus be seen that, when section 3188, respecting the payment of compensation to the appraisers, was adopted in 1915, section 3210 remained in full force and effect and with-

out change. Moreover, section 3210 as it now reads has been
retained in full force and effect ever since it was first adopted
in chapter 119, Laws Utah 1905, and as re-enacted in chapter
64, Laws Utah 1919.

Through all the mutations and changes of our inheritance
tax law, therefore, the provisions of section 3210 have re-
mained without change in full force and effect, except that
in chapter 64 of the Laws of Utah 1919 the two words "At-
torney General" were substituted for the two words "State
Treasurer" to make that section conform to the amendment
respecting the collection of the inheritance tax by the Attor-
ney General instead of by the State Treasurer. While that
change in itself is trivial, it is, nevertheless, of much signifi-
cance in that the Legislature did not overlook the provisions
of section 3210 with respect to costs, but re-enacted that sec-
tion to make the change just stated, and all of the provisions
respecting the payment of costs were retained precisely as
they were first adopted in 1905 and as re-enacted in all of
the subsequent amendments to the inheritance tax law. If,
therefore, there were no other reason for giving the provi-
sions respecting the collection of costs by the state full force
and effect, the one just referred to would alone be sufficient
to require us to construe the two sections aforesaid so as to
effectuate that result. The history of the several enactments
to which I have briefly referred clearly shows the intention
of the Legislature to maintain in full force the provisions of
section 3210, regardless of other changes in the law.

There are, however, still other reasons why the provisions
of both section 3188 and section 3210 should be given full
effect. In 2 Lewis, Suth. St. Const. (2d Ed.) § 380, the
principal rule of construction is stated in these words:

"It is an elementary rule of construction that effect must be
given, if possible, to every word, clause, and sentence of a statute.
Statutes should be so construed that effect may be given to all of
their provisions, so that no part will be inoperative or superfluous,
void, or insignificant, and so that one section will not destroy
another."

The text is supported by almost innumerable authorities.
If, therefore, we read the provisions of section 3188 and sec-

tion 3210 with the foregoing canon of construction in mind and in the light of their history, there is, there can be, no difficulty in giving all of their provisions full force and effect. If, however, we adopt the conclusions of the majority, we must not only ignore both the foregoing canon of construction and history of those sections, but we must pass over in silence one of the important, if not controlling, provisions of section 3210. It is there in explicit terms provided:

"In all cases where any property so passes as to be liable to taxation under the inheritance law, *all costs of the proceedings had for determining the amount of such tax or for determining whether the property of the entire estate is sufficient in amount as to render that part passing to heirs subject to the tax, shall be chargeable to such estate, and to discharge the lien upon such property all costs, as well as the taxes, must be paid.*" (Italics mine.)

No one, it seems, found any difficulty in construing and applying those provisions of that section prior to the commencement of the proceedings in this case. It was utterly immaterial whether the appraisers' fees were much or little so long as those costs had to be paid. Can it now successfully be contended that the appraisers' fees are not embraced within the language used which is italicized? How can the value of an estate be determined except by making an appraisement? If, therefore, all costs "shall be chargeable to the estate," "all" must necessarily include the costs of ascertaining the value of the estate. The principal item of costs of ascertaining that value consists of appraisers' fees. If all costs are to be paid by the estate, therefore, upon what theory can it be held that only a part need be paid?

It is contended, however, that because in section 3188 it is provided that the appraisers shall be "paid out of the state treasury as other state officers are paid," therefore the estate by implication is to be relieved from the payment of those costs. If that contention prevails, however, then all of the provisions of the inheritance tax act cannot be given full force and effect. Then only the provisions of section 3188 are made effective while those of section 3210 which I have herein italicized are entirely ignored. In reality, however, there is no conflict, much less an unavoidable repugnancy,

between the provisions of the two sections.  All the provisions of both may stand and be given effect.  All that was intended to be accomplished by the adoption of section 3188 was to overcome the incongruity that existed in the inheritance tax act before its adoption.  By reference to the provisions of section 3210 as originally adopted and as continued in force to the present time it will be seen that in all cases where the ascertained value of the estate did not authorize the collection of the inheritance tax under the inheritance tax act the costs "are to be paid as ordered by the court," and in case a decision adverse to the state was rendered "with an order that the state pay the costs," then the clerk of the court was required to certify such fact to the State Treasurer, etc. The inheritance tax appraisers thus always were required to wait for their fees until the estate was settled and had to abide by the orders of the court with respect to the payment of costs.  In order to cure that difficulty section 3188 was adopted in 1915.  In view that all the provisions of section 3210 as adopted in 1905 were retained in full force and effect, nothing more was intended therefore by the adoption of section 3188 than to provide for certain and speedy payment of the appraisers' fees and to relieve them of the temptation to make inequitable appraisements.  It was no more difficult, however, to collect the costs and expenses incident to making appraisements, including appraisers' fees, after section 3188 was adopted in 1915 than it was before it was adopted.  Moreover, the meaning of the language of section 3210 respecting the payment and collection of costs was and is precisely the same as it was before section 3188 was adopted.  If the meaning is the same, then the effect must be the same.

In the face of the history of the legislation and the language used in the two sections in question, when construed in accordance with the cardinal rules of construction, can any one successfully contend that the provisions of section 3210 do not mean precisely what they meant before 1915, and that they should not be given full force and effect?  Is there anything incongruous about doing that?  Why is the state to be deprived of collecting costs merely because it has provided

a different and more satisfactory method of paying the state's appraisers? Has it not now the same right to collect the costs and to pay the money into the state treasury that it had before the enactment of section 3188 and to apply it in payment of its obligations precisely as it did before 1915? Again, why should the taxpayers be called upon to pay the expenses of appraising estates to ascertain their value for the purpose of collecting the inheritance tax? If the taxpayers are required to do that the amount of the inheritance tax is reduced precisely to that extent. I confess my utter inability to perceive any valid reason against the state's power to collect costs now precisely as before the enactment of section 3188, while, upon the other hand, the language of the statute, when construed in the light of the cardinal rules of construction, clearly supports the state's right to do so.

As a final reason why the ordinary meaning of the language used in the inheritance tax act should not prevail it is urged that the Legislature in 1915 amended what is now section 3186 of that act by eliminating therefrom the words "the cost of appraisement for the purpose of assessing the inheritance tax"; that by so doing such costs were treated as a part of the estate upon which the tax should be computed and paid. It is contended, therefore, that inasmuch as the estates were not allowed to deduct such costs after said amendment, in lieu thereof the state assumed to pay them. Quite apart from the fact that such a reason can have no effect upon the usual and ordinary meaning of the language used in the act, the alleged reason, nevertheless, in and of itself, has no force or effect. The elimination of the quoted words merely accomplished what should have been done long before, namely, to prevent deductions from estates that should not have been allowed at all. There never was any reason whatever why the costs of appraisement should be deducted as debts from the assets of the estate. But how can any reasonable person assume that by eliminating the foregoing words from the section aforesaid and thereby requiring that the tax be computed upon the whole estate without deducting the cost of appraisement because of that slight burden im-

posed upon the estates, the state, in lieu thereof, would assume a twentyfold greater burden? Take the case at bar as an example. Here the cost of appraisement amounts to $300, which is the amount in controversy. The tax upon that sum would amount to $15. That sum the state would now collect, which it could not have collected before the amendment of section 3188 by striking out the words before stated. It is, however, insisted that in lieu of the $15 aforesaid which the state would collect the Legislature has imposed upon the general taxpaying public an additional burden of paying $300, the amount involved here; and this, too, at a time when every one knows that the Legislature is using every possible means of raising a sufficient revenue to defray the extraordinary expenses of the state. While the writer has heard many reasons advanced why the Legislature amended a particular law, or why it included a particular provision therein, yet he has never heard of a case where it is insisted that the ordinary meaning of language shall not prevail in favor of the state because it has assumed a burden of twenty to one against itself. The reason just discussed why the language of the statute should not be given its ordinary effect, however, merely illustrates how far afield we will be required to go in order to avoid the natural and usual order of things.

The judgment of the district court should be affirmed, with costs.

THURMAN, J. In view of the concession made that sections 3188 and 3210, Comp. Laws Utah 1917, are not in conflict, and that one does not modify or repeal the other, I am at a loss to understand how it can be consistently contended that section 3210 does not have the same scope and meaning now that it had prior to the enactment of the other section. The fact will not be challenged that prior to the act of 1915, which is now section 3188, appraisers' compensation was considered "costs of the proceedings had for determining the amount of such tax" and chargeable to the estate, if the estate was found subject to the tax. If section 3188 is not repugnant to section 3210, by what process of reasoning can it be contended that the meaning of section 3210 has been

so radically changed as to practically amount to a repeal? The only way to reconcile the two statutes so as to allow them both to stand is to adopt the rule and apply the reasoning of Mr. Justice FRICK in his dissenting opinion. Besides this, if it be assumed that the statutes are repugnant and irreconcilable, then it becomes conclusive that the Legislature intended that section 3210, as far as its language is involved in the instant case, should stand, whatever may have been its intention with regard to section 3188. In Sess. Laws Utah 1919, c. 64, at page 174, the Legislature re-enacted and reaffirmed that portion of section 3210 which is the subject of dispute in this litigation, leaving that portion exactly as it was first enacted in 1905. This is the last expression of the Legislature as to section 3210. The last expression as to section 3188 was in 1917, and therefore, if there is any repugnancy between the two, by every rule of construction section 3210 should retain the full meaning and effect that had been given to it prior to the enactment of section 3188.

In Lewis, Sutherland (2d Ed.) vol. 1, § 247, speaking of repeals by implication, the author says:

"The repugnancy being ascertained, the later act or provision in date or position has full force, and displaces by repeal whatever in the precedent law is inconsistent with it."

The Chief Justice, in his opinion, makes the point that there is a difference between "fees" and "costs," as those terms are used in the section. As to this there is no dispute. But my contention is that what is denominated "fees" in one stage of a proceeding may become "costs" in another. For instance, the clerk of the district court is allowed by law certain fees payable in advance by the party commencing an action. If the plaintiff succeeds and is allowed his costs, the fees so paid are taxable as "costs." They are no longer called fees. This distinction is plainly stated in 1 Words and Phrases, Second Series, at page 1077:

"As between a party to a suit and the officer or witness the charges allowed are invariably denominated fees; but, as between the parties to the suit, these charges are usually called costs; and the word 'cost,' when used in relation to the expenses of legal proceedings, means a sum prescribed by law as charges for the services

enumerated in the fee bill, *City of Carterville* v. *Cardwell*, 132 S. W. 745."

In principle there is a close analogy between a proceeding to determine the liability of an estate to pay an inheritance tax and an action at law to recover a sum of money. The state stands in the relation of plaintiff in the action and the estate as defendant. Under section 3188 the state in the first instance pays the per diem of the appraisers, just as the plaintiff in an ordinary action advances the fees of the clerk. If the state succeeds in establishing the liability of the estate to pay the tax, the state under section 3210 recovers its costs and is reimbursed the amount theretofore paid to the appraisers. This, it occurs to me, is the plain meaning of the statutes in question, and the only rational interpretation that can be made if both sections are to stand.

I concur in the dissenting opinion.