**Flem A. CLAY**

v.

**OVERSEAS CARRIERS CORP.**
**and**
**Maritime Overseas Corp.**

**Civ. A. No. 72–1399.**

United States District Court,
E. D. Pennsylvania.

Oct. 10, 1973.

Robert C. Daniels, Freedman, Borowsky & Lorry, Philadelphia, for plaintiff.

Carl D. Buchholz, III, Philadelphia, for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

### Introduction

This Court denied defendants' motion to transfer this action on October 30, 1972 and denied defendants' subsequent motion for entry of security on March 9, 1973. We have received notice as nominal respondent that a petition for a writ of mandamus has been filed and that the respondent has been ordered to file and serve an answer. This Court, as nominal respondent, has also been invited to file and serve an answer. We do not wish to file a formal answer nor to participate in any oral argument. However, since this Court's decision was made prior to Solomon v. Continental American Life Insurance Co., 472 F.2d 1043, 1048 (3rd Cir. 1973), we will set out, in this memorandum, for the convenience of the Court of Appeals, the factors on which this Court relied in deny-

ing defendants' motions for transfer and for the entry of security.

## FACTUAL BACKGROUND

Plaintiff is a seaman[1] who filed suit in this Court on July 17, 1972 seeking damages for negligence and unseaworthiness and maintenance and cure and wages. The injury complained of is primarily an injury to the eye which allegedly was caused as a result of a hammer having been propelled against plaintiff's head when scaffolding on defendants' vessel, the SS OVERSEAS DAPHNE collapsed.[2]

The defendants filed a motion to transfer this action to the United States District Court for the Eastern District of Virginia.[3] Thereafter, said motion was denied by order of the Court entered on October 30, 1972.[4] Thereafter, on February 13, 1973, the defendants filed a motion for entry of security[5] and this motion was denied on March 9, 1973.[6]

At the time of deciding the motion to transfer, the Court had before it the following information.

The plaintiff resides in Norfolk, Va. and defendants are allegedly subject to service of process there.

The plaintiff allegedly received a pre-employment physical in Norfolk on February 24, 1971,[7] and it is averred by defendants and denied by plaintiff[8] that at that time plaintiff intentionally concealed relevant medical information, to the prejudice of the defendants, specifically as to the condition of his eyes.[9] The plaintiff joined the crew of the SS OVERSEAS DAPHNE in Norfolk on February 24, 1971 and he allegedly received the injury, referred to above, while on board said ship in South Vietnamese waters on April 28, 1971. On May 28, 1971, plaintiff requested a Master's Certificate in San Francisco, California and was examined in San Francisco by the United States Public Health Service (USPHS). He was then transferred to the USPHS in Norfolk where he received a re-examination and treatment. He received out-patient care at Norfolk from June 2, 1971 to June 23, 1971 and was admitted for surgery to repair a detached retina on July 9, 1971 and discharged on July 30, 1971. Thereafter, he received out-patient care at Norfolk and may return there for follow up visits.[10]

Plaintiff and defendants have retained both Norfolk and Philadelphia counsel in regard to the plaintiff's claim. By letter of November 20, 1971, defendants were notified that plaintiff had retained Norfolk counsel to press his claim.[11] Thereafter, defendants also retained Norfolk counsel. The defendants assert that both Norfolk counsel

---

1. Complaint, Document 1, page 1, paragraph 1; Answer and Counter-Claim, Document 3, page 1, paragraph 4.

2. Petition, Plaintiff's Brief Contra Motion To Transfer, Exhibit C, page 1.

3. Petition, page 1, paragraph 4.

4. Petition, page 4, paragraph 7.

5. Petition, page 5, paragraph 8.

6. Petition, page 6, paragraph 9.

7. Answer and Counter-Claim, document 3, page 3, paragraphs 1 and 6. We assume that the correct date is 1971 as in the counter-claim although the motions state it as 1972.

8. Plaintiff's Answer to Defendant's Motion To Transfer, document 5, page 1, paragraph 3.

9. Defendants Answer to Complaint and Counter-Claim, document 3, page 3, paragraphs 2, 4, 7, 8. The only prejudice alleged is that because of alleged falsification the defendant was under no duty to pay the plaintiff a sum of $632.00 as maintenance and cure which they paid plaintiff after his injury. The Court is left to speculate as to any additional significance to this conclusory allegation. There is no claim that it is a defense to plaintiff's action.

10. Petition, Exhibit A.

11. Motion To Transfer, document 6, Exhibit A.

had performed extensive investigation and that settlement negotiations had begun prior to the institution of this action in this court. Plaintiff denies this and claims that only minimal preparation had been performed. An affidavit of defendants' Norfolk counsel and attached letters [12] fail to reveal any extensive preparation or negotiations. To the contrary, these materials, which cover the period immediately preceding the filing of plaintiff's complaint in this Court, reveal that defendants' counsel received by mail the plaintiff's complete medical records from the USPHS in Norfolk and copies of reports from overseas physicians; which were voluntarily supplied by the plaintiff. In addition, plaintiff, by mail, provided defendants' counsel with authorization to procure plaintiff's medical records from the USPHS in San Francisco. It is true that plaintiff, through his Norfolk attorney, offered to settle the case on March 17, 1972 but the affidavit and letters indicate that defendants had not responded to the offer some four months later when suit was filed in this Court on July 17, 1972; approximately fifteen (15) months after the date of the accident. Thus, there is no evidence that settlement negotiations of any serious nature had taken place.

A private physician, Dr. Lederman, a resident of Norfolk, examined plaintiff's eye subsequent to the operation.[13]

In regard to liability, the defendants allege that there was another seaman, Larry Combs, on watch when plaintiff suffered his injury and that he resides in Norfolk. It was not stated what knowledge of the accident this individual may have possessed; nor did defendants allege that he would be deposed or called as a witness at trial by defendant. Instead, defendant vaguely referred to all witnesses residing in Norfolk.[14]

In final support, the defendants alleged that it would be inconvenient for both plaintiff and defendant to try the case in Philadelphia; for, witnesses as to all relevant aspects of the case are in Norfolk. In their brief, defendants alleged it would be important to be able to subpoena doctors and other witnesses from Norfolk for trial.[15]

---

12. Motion To Transfer, document 6, Exhibit B.

13. Petition, Exhibit A.

14. In the defendants' brief in support of their motion for the entry of security, they state Combs is the only crew member with knowledge of the incident. Petition, Motion For Security, page 2.

This later motion and brief was, of course, filed subsequent to this Court's decision on the motion to transfer. We include this allegation at this point in the memorandum, notwithstanding the potential danger of confusion as to the information the Court had before it on the motion to transfer, in order to present all the factual background together.

However, despite the above, the Court was aware that there was a possible eye witness to the accident. Curtis L. Brodnax, apparently a seaman, whose address is not disclosed, had given a statement to plaintiff's Norfolk counsel. Motion To Transfer, document 6, Exhibit B, March 16, 1972 letter of plaintiff's Norfolk counsel, page 2.

15. Again, in order to present all factual background evidence together, we will include here related allegations on the subsequent motion for entry of security. In that motion, the defendants alleged that they would be required to call witnesses from Norfolk. In their brief on this latter motion, they claimed that they would have to interview and depose the physician who gave plaintiff his pre-employment examination, all the physicians at the USPHS who treated plaintiff after the accident on April 28, 1971, all the physicians at the USPHS who treated plaintiff for the identical eye problem prior to April 28, 1971, the physician at the USPHS who performed the surgery on the plaintiff, Larry Combs, and Dr. Lederman who examined plaintiff on several occasions. Further, they indicate they will call all these witnesses for the trial. Petition, Exhibit E.

The information in this section of the text, except that specifically noted, can be found in the Petition, Exhibits B and E. This Court considered the averments of counsel in the motions and their statements in their briefs, notwithstanding the fact that the information was not supplied under affidavit.

### Motion To Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

We note briefly that, under this statute, the plaintiff's choice of forum, while not controlling, is entitled to marked respect. Of course, the burden is on the moving party to establish that a balancing of proper interests weighs in favor of transfer and this balance must be strongly in favor of transfer. See, e. g., Shutte v. Armco Steel Corporation, 431 F.2d, 22, 25 (3rd Cir. 1970), cert. den. 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

Some of the factors appropriate to consider for a determination under the broad standards of 28 U.S.C. § 1404(a) include: plaintiff's choice of forum in accordance with statutory authority, the private interest of the litigants, the relative ease of access to sources of proof and the need for process, the availability of compulsory process for the attendance of unwilling witnesses, the inconvenience of witnesses away from home and work, a view of the premises if appropriate, the pile-up of litigation in congested centers [16] and, finally, all other practical problems that make trial of a case easy, expeditious, and inexpensive. See, e. g., Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); Brown v. Woodring, 174 F. Supp. 640, 645–646 (M.D.Pa.1959).

The thrust of the motion to transfer in this case is the situs of and access to sources of proof through witnesses and records.

The production of such information will also be essential for the plaintiff at trial. However, the fact that plaintiff can choose his forum within the bounds of permissible venue means that he may perhaps inconvenience himself in a practical sense. Nevertheless, when the plaintiff chooses his forum, he establishes perhaps conclusively, from his perspective, that the court in which he brings his action is convenient for him. The Court, of course, is not bound thereby. However, the defendant must make a persuasive showing to establish that the chosen forum, in fact, does inconvenience the plaintiff. The defendants have produced absolutely no such evidence in this case.

Notwithstanding the above, the plaintiff's choice of forum and his established convenience do not end the inquiry under 28 U.S.C. § 1404(a). The question remains, whether the choice of forum creates problems of convenience for the other party or parties and witnesses and for the interests of justice of so substantial a nature that a transfer is appropriate; notwithstanding plaintiff's choice of forum. Transfer, to be appropriate, must ameliorate such problems while not merely shifting the burden of inconvenience to the plaintiff. See, e. g., Mitchell v. Farrell Lines, Inc., 350 F. Supp. 1325, 1327 (E.D.Pa.1972).

A superficial reading of the defendants' motion may suggest a plausible basis for granting a transfer motion. However, in passing on the appropriateness of transfer, a superficial reading is inadequate. Conclusory affidavits are not helpful and are insufficient. The names and location of witnesses should be supplied. Statements should be furnished as to the materiality of testimony of alleged witnesses. Such standards

16. It is the practice of this Court to immediately add to its current trial list any personal injury case when the parties have certified their readiness. Thus, the possibility of backlog and delay is not relevant to this motion. The defendants in their motion to transfer stated that due to the backlog in this district, trial of this case would be obtained earlier in the Eastern District of Virginia. They offered no evidence to support this statement.

are necessary if the Court is to make a rational decision. For example, the mere fact that the greatest number of potential .witnesses are at a particular location is not sufficient if the Court can not ascertain which of these will be called and the materiality of the testimony thereof. If the defendant has not produced such information so as to provide the Court with a rational basis for transferring an action and depriving a plaintiff of his choice of forum, then the defendant has not sustained his burden. *See generally,* Chicago, Rock Island & Pacific Railroad Co. v. Hugh Breeding, Inc., 232 F.2d 584, 588 (10 Cir. 1956) cert. den. 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957); General Portland Cement Co. v. Perry, 204 F.2d 316, 319–320 (7 Cir. 1953); Bogosian v. Gulf Oil Corporation, 337 F.Supp. 1230, 1233 (E.D.Pa. 1971); Bonnell v. Baker, 331 F.Supp. 1373, 1374 (E.D.Pa.1971); Koeneke v. Greyhound Lines, Inc., 289 F.Supp. 487, 488–489 (W.D.Okla.1968); Development Company of America v. Insurance Company of North America, 249 F.Supp. 117, 118–119 (D.Md.1966); Holiday Rambler Corp. v. American Motors Corp., 254 F.Supp. 137, 139–140 (W.D. Mich.1966); Johnson v. Chicago, Rock Island and Pacific Railroad Co., 228 F. Supp. 160, 161 (D.Minn.1964); Clendenin v. United Fruit Co., 214 F.Supp. 137, 139–141 (E.D.Pa.1963); Coffill v. Atlantic Coast Line Railroad Company, 180 F.Supp. 105, 107 (E.D.N.Y.1960); Jenkins v. Wilson Freight Forwarding Co., 104 F.Supp. 422, 424 (S.D.N.Y.1952).

We recognize that the required specificity of proof necessary to support a transfer motion can be overemphasized. This requirement varies with the circumstances of each case; for, in certain factual contexts, logical inferences may be drawn without the particularized information that may be necessary in other situations. It is not clear that the evidentiary standards demanded by the courts have been uniform. Of course, courts will differ on the showing, as to facts and inferences, necessary to provide a rational basis for transferring an action. *See, e. g.,* Hunter v. Chas. Kurz & Co., Inc., C.A. 39767 (E.D.Pa., July 20, 1966); Brown v. Woodring, *supra,* 174 F.Supp. at 647.

Nonetheless, it is clear that a court cannot, under 28 U.S.C. § 1404(a), transfer a case from a forum within the congressional grant of venue without proof of reasons related to the appropriate standards, based on sufficiently established facts. While the defendants in this case have made many broad conclusory allegations, they have not, by affidavit or other proof, met their burden as to the substantiated specifics necessary to support their allegations.

The fact that plaintiff resides in Norfolk is of little consequence; for, firstly, in line with the discussion above, he has chosen this forum, secondly, as a party, his appearance is assured, and thirdly, he is a seaman and there is no allegation in this motion that the plaintiff will not follow the itinerant custom of seamen. The defendants allege that they are subject to service of process in the Eastern District of Virginia. This broad conclusory allegation is denied by plaintiff and unverified by specifics. However, assuming it is true, they are also subject to service of process in Philadelphia. Thus, this allegation indicates nothing as to the relative inconvenience to the defendants in defending this suit in Philadelphia.

The accident occurred on board a ship far from both proposed forums. There is no allegation of the necessity for a view of ship at trial. Even assuming the appropriateness of a view of the vessel, the allegation that the ship is not coming to Philadelphia in the foreseeable future tells the Court little about where the ship will be in the foreseeable future. The defendants have not alleged that the ship is coming to Norfolk in the foreseeable future.

Finally, we come to the question of the occurrence witnesses and the medical witnesses and records.

At the time this Court decided the motion to transfer, it was not clear that the seaman, Larry Combs, knew anything about the accident. The Court was aware that one Curtis L. Brodnax was allegedly an eyewitness. Nevertheless, Brodnax's residence was not disclosed and the logical inference is that he is a seaman. Since Brodnax's residence was not disclosed, his existence is irrelevant to the transfer decision. Subsequent to the entry of the order denying the motion to transfer, it was claimed that Combs did have knowledge of the accident. However, even if this allegation had been before the Court on the motion to transfer, we would have given it little weight for the second reason which disposes of the significance of witness Brodnax even assuming that he is a Norfolk resident. Because of the nature of their work, the evidence of seamen is invariably taken by deposition. Medich v. American Oil Co., 177 F.Supp. 682, 683 (E.D.Pa.1959). On the motion to transfer, the defendants made no showing to the contrary and it is sheer speculation that he will be available for trial either in Philadelphia or Norfolk.

The location of medical records and witnesses may be important. We would not say that the fact that the testimony of medical witnesses can be taken by deposition means that their location is irrelevant. *Cf.,* Banton v. Kawasaki Kisen K. K., C.A. 71–2665 (E.D.Pa., Jan. 31, 1972). Nor would we make the general statement that it is always preferable to try the case where the records and witnesses are located. *Cf.,* White v. Lykes Brothers Steamship Co., Inc., 333 F.Supp. 836 (E.D.Pa., January 28, 1971); Long v. Waterman Steamship Corporation, C.A. 35569 (E.D.Pa., September 21, 1964); Hardee v. United

States Lines Co., C.A. 39986 (E.D.Pa., August 22, 1966). Such statements are useful as guides to decision but do not have significance independent of an analysis and appraisal of the facts of the particular case.

At the time of the motion to transfer, defendants' Norfolk counsel had been given by the plaintiff all of his USPHS medical records from Norfolk and his overseas medical records.[17] In addition, plaintiff had supplied authorization to procure his San Francisco USPHS records. The Court sees no difficulty in having these records sent from Norfolk counsel to Philadelphia counsel, and the defendants have demonstrated none.

The defendants vaguely alleged that it would be necessary to subpoena doctors and witnesses from Norfolk. Although the motion for security was not before the Court at this time, the allegations in this regard were not materially improved. Any additional specificity is really quite illusory. In the motion for transfer, the defendants vaguely allege that doctors and witnesses will have to be subpoenaed. Essentially, the motion for security adds the allegation that every doctor who examined and/or treated the plaintiff and every local witness will have to be called.

We will pass over the fact that there are other doctors involved, apparently in San Francisco. The defendants, of course, can depose all of these potential witnesses.

Moreover, at the time of the entry of the order denying the motion to transfer, there was no definitive declaration as to which of these witnesses if any would be asked to testify at trial. This is especially important in light of the fact that defendants' Norfolk counsel had the plaintiff's complete medical records from the Norfolk USPHS in their possession for approximately three months prior to the filing of this motion

17. To clarify the reference to overseas medical records, we note that the plaintiff alleges he also received medical treatment in Taiwan, Republic of China. Plaintiff's Answer To Defendant's Motion For Security, Document 10, page 1, paragraph 4.

to transfer. And yet, defendants have not named a single specific USPHS doctor who they will depose or call to trial. Nor did they do so five months later when they filed their motion for entry of security. It is true that these doctors treated plaintiff in Norfolk; some prior to his recent accident and some subsequent to that time. However, the current residence of these doctors is not disclosed. The doctors of the USPHS are seldom called to trial. It is clear that their assignments to particular hospitals are not permanent. Alleyne v. Nippon Yusen Kaisha, 328 F.Supp. 30, 32 (E.D.Pa.1971); Clifton v. American Oil Company, C.A. 37410 (E.D.Pa., January 10, 1966); McFarlin v. Alcoa Steamship Company, 210 F.Supp. 793, 794 (E.D.Pa.1962); Biedrzychi v. Alcoa Steamship Company, 191 F.Supp. 895 (E.D.Pa.1961). Thus, proof of their residence is critical.

There remains the plaintiff's pre-employment physical examination and the private doctor, Lederman, whom the plaintiff visited in Norfolk. The identity, affiliation, and residence of the physician who administered plaintiff's pre-employment physical was not disclosed. Thus, there is no basis for speculating that the defendant would have any difficulty deposing or producing this potential witness for trial. The importance and unavailability of Doctor Lederman is questionable on the record.

■ Thus, the defendants have failed to carry the burden of persuading this Court of the appropriateness of transfer. Vague general statements and even expansive definite statements of the need to call unspecified witnesses impress this Court as being of an *in terrorem nature*. It is the experience of this Court that trial produces many less actual witnesses than there were potential witnesses regardless of the convenience of the forum. *See, e. g.,* Coffill v. Atlantic Coast Line Railroad Company, *supra,* 180 F.Supp. at 107; Brown v. Woodring, *supra,* 174 F.Supp. at 647.

The only substantial claims of the defendants relate to the medical witnesses and reports. In light of the record, it is spurious to argue that the plaintiff should be transferred to Virginia rather than the Virginia records be transferred to Philadelphia. The strength of the defendants' argument on the medical witnesses rests primarily on doctors of the USPHS. The fact that none of these are named nor are their residences supplied, in light of the present record and the experience of this Court, means that the defendants have not persuaded the Court as to the inconvenience to these doctors nor of the harm to the defendants by the fact that they will have only the compulsory process of this Court rather than that of the Eastern District of Virginia at the trial of this action.

■ The defendants presently have both Norfolk and Philadelphia counsel. They need not retain both. Any additional cost to the defendants occasioned by defending this action in this Court in light of the fact that the bulk of plaintiff's medical treatment took place in Norfolk is speculative. In fact, on the record before this Court on the motion to transfer as analyzed above, this Court would say that it is insubstantial. The convenience of defendants' Norfolk or Philadelphia counsel is not a relevant factor. Roller Bearing Company v. Bearing, Inc., 260 F.Supp. 639, 640 (E.D. Pa.1960).

## MOTION FOR SECURITY

Five months after their motion for transfer and approximately three months after this Court's order denying same, the defendants requested an order "directing the plaintiff to bear the expense of either (1) producing within the Eastern District of Pennsylvania for deposition, such witnesses as are determined to have any knowledge of the occurrence giving rise to this cause of action or the nature and extent of plaintiff's alleged injuries; (2) reasonable travel costs and counsel fees of

defense counsel attending depositions within the Eastern District of Virginia of such witnesses, and the expense of producing such witnesses for trial within the Eastern District of Pennsylvania. As security for these latter trial costs the plaintiff to deposit with the Court $1,500.00 as security." [18]

The motion does not only request security for costs but prepayment by the plaintiff of the expenses of the defendants in deposing witnesses.

The initial difficulty with this request is the statute on seamen's suits, 28 U.S.C. § 1916, which provides:

."In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor."

The defendants rely on Villanueva v. Gulf Oil Corporation, 262 F.Supp. 492 (E.D.Pa.1967) and Cohn v. George, 297 F.Supp. 527 (E.D.Ill.1968). In *Villanueva,* the plaintiff-seaman's attorney demanded that defendant pay him the cost of a deposition which counsel for defendant had taken of the plaintiff and that the defendant supply him with free copies of the transcript. The court held that the plaintiff was not entitled to such payments on the ground that Congress did not intend through the passage of the statute on seamen's suits in 1917 and its subsequent re-enactment as 28 U.S.C. § 1916 to foist on defendants the expense of the plaintiff's use of the newly liberalized federal rules of discovery.

"The purpose of the statute · . . . is to relieve the plaintiff from prepayment of those fees and costs of suit, such as the initial filing fee and various Marhal's fees, that must be paid to the court. We cannot believe that the statute gives

the plaintiff an automatic right to avoid prepayment of any other costs that he may incur in preparing his case for trial.

The construction that the plaintiff places on 28 U.S.C. § 1916 would be extremely onerous to. defendants. Not only would they have to pay their own pretrial costs but would be burdened with those of the plaintiff. Absent any clear indication of this surprising result in the statute, we will not bestow our imprimatur on it."

Villanueva v. Gulf Oil Corporation, *supra,* 262 F.Supp. at 494 (footnotes omitted).

In *Cohn,* a seaman filed a libel *in rem* action against a vessel and the Marshal refused to seize the vessel without prepayment of a deposit to cover expenses while the vessel was in his custody. The court was faced with 28 U.S.C. § 1921 which provided the Marshal shall collect a deposit and periodic payments to cover such expenses. The court relied on the broad language of *Villanueva* as to the scope of 28 U.S.C. § 1916 and held that the Marshal need not seize the vessel without a deposit from the plaintiff-seaman since the expenses involved were not payable from public funds.

However, there is contrary authority on the scope of 28 U.S.C. § 1916 even as to the type of plaintiff's expenses referred to above. In Thielebeule v. M/S Nordsee Pilot, 452 F.2d 1230 (2 Cir. 1971), foreign seamen filed an *in rem* action for unpaid wages against a ship of German registry. The Marshal refused to attach the vessel unless plaintiffs paid $2,000 which were the costs to be incurred every ten days for safeguarding the ship while in his custody. Plaintiffs paid the initial deposit and obtained an order directing the Marshal to sell the ship, which sale was scheduled 14 days later. Prior to sale, the Marshal demanded that plaintiffs prepay additional costs. The plaintiffs applied to

18. Petition, Motion For Security, Exhibit E, page 1.

the court for relief and the District Court denied it holding that the provision in 28 U.S.C. § 1921, providing that Marshals shall collect such expenses as these in advance and periodically, controlled over 28 U.S.C. § 1916. The Circuit Court reversed holding that 28 U.S.C. § 1916 covered these expenses and controlled over 28 U.S.C. § 1921. This conclusion was based on the congressional policy to facilitate seamen's suits and the fact that previously it had been the administrative practice of Marshals to advance the required sums and then to recoup from the proceeds from the sale of the ship.[19]

Notwithstanding the possible conflict in the above cases as to the scope of 28 U.S.C. § 1916, both of the cases relied upon by the defendants involved plaintiff seamen seeking payment of his own litigation expenses beyond filing and service fees from a defendant or by a Marshal who did not have the right to draw on public funds for the expenditures involved.

The case most on point to the instant request is Walsh v. Marine Navigation Co., 34 F.R.D. 25 (S.D.N.Y.1963). There, the plaintiff-seaman sought to take the deposition on oral examination of five witnesses who resided in Louisiana. The defendant moved for an order requiring plaintiff to pay the expenses, including attorneys' fees in attending the deposition, or that they be taken in New York. The court reluctantly refused. It held that an order requiring prepayment of these fees would violate 28 U.S.C. § 1916. As to the alternative request, the Court noted that the defendant had failed to show how the plaintiff could require the witnesses to

come to New York and, in any event, that it would be unjust to so require in view of the substantial expense involved.

The decisions discussed above are not, in fact, conflicting. The decisions in *Villanueva* and *Cohn* are quite sound. Neither the language of nor the policy embodied in 28 U.S.C. § 1916 require that a defendant pay the plaintiff's litigation expenses as they arise or that a Marshal pay for expenses that he cannot pay for out of public funds. The expansive interpretation of "fees" rejected in both those cases would have placed a burden on defendants and on Marshals, personally, not intended by Congress. Moreover, the decisions in *Thielebeule* and Adamowski v. Bard, *supra,* indicate that the scope of 28 U.S.C. § 1916 is not to be determined by definitions of the words "fees" and "costs" that arbitrarily limit their scope but by reference to the policy embodied in 28 U.S.C. § 1916 as limited by competing policy considerations. The Court in *Thielebeule* found expenses beyond filing fees to be included in 28 U.S.C. § 1916 in order to sustain the congressional policy to facilitate seamen's suits when an administrative procedure was available which obviated an imposition of an economic burden on Marshals personally. In *Adamowski,* the Court held that a court reporter fee was not within 28 U.S.C. § 1916 when confronted with a specific statutory provision to that effect.

■■■■■■■ Consistent with this approach, we concluded that, in general, 28 U.S.C. § 1916 precludes the Court from ordering the prepayment by plaintiff of the defendants' litigation costs and the posting of security for costs. The reasoning applicable in *Villanueva* does not

---

19. The Third Circuit in Adamowski v. Bard, 193 F.2d 578 (3 Cir. 1952), cert. den. 343 U.S. 906, 72 S.Ct. 634, 96 L.Ed. 1324 (1952) dealt with a request by a seaman to have an official court reporter furnish him with a transcript of the stenographic record made at trial of the case without prepayment of fees or costs or furnishing security therefor. The Court expressly refrained from an analysis of the scope of 28 U.S.C. § 1916. They held that 28 U.S.C. § 753(f) providing for prepayment for transcripts except for those to be paid for by the United States controlled on the basis of the rule of statutory construction that the specific provision controls over the general and so that the seaman had to pay.

apply to the relief requested on this motion. The term "fees" has always referred to a party's own expenses in litigation. The term "costs" has always referred to an allowance which the law sometimes awards to a prevailing party and against the losing party. 6 Moore's Federal Practice ¶ 54.70 (2nd ed. 1971). Since Congress used both the words "fees" and "costs", it was apparently aware of their different connotations. The language of 28 U.S.C. § 1916 then clearly prohibits the Court from requiring plaintiff seamen to prepay or post security for defendant's costs. The policy of 28 U.S.C. § 1916 would seem to require that this conclusion remain unchanged notwithstanding the increased expenses that a defendant may incur in litigation with a seaman through the use of the liberalized federal discovery rules. This does not involve the imposition of an unexpected burden on either the defendant or the United States or its agents and is consistent with the policy of assisting seamen in their access to federal courts. In fact, it seems correct to say that to require seamen to prepay or put up security for costs because such costs to defendants have risen over the years would hardly be consistent with the intent of Congress.

█ Thus, in general, Local Rule 38(a) which provides in relevant part:

"In every action in which the plaintiff was not a resident of the Eastern District of Pennsylvania at the time the suit was brought . . . an order for security for costs may be entered. . . ."

cannot be applied, as requested by the defendant's motion here, for to do so would conflict with a congressional statute. Moreover, the request for prepayment in this motion, in addition to the request for security, is not provided for in this Rule.

However, the Court recognized that a more difficult question was whether, in the exercise of its discretion in a motion under 28 U.S.C. § 1404(a), a District Court may require prepayment and/or security for costs from a seaman-plaintiff as a condition for not transferring his action from one District Court of the United States to another. We are aware that such conditions were involved in Alleyne v. Nippon Yusen Kaisha, 328 F.Supp. 30, 32 (E.D.Pa.1971) and Banton v. Kawasaki Kisen K. K., C. A. 71–2665, at 4 (E.D.Pa. January 31, 1972); however, in each case, the condition embodied an agreement of counsel and, there was no discussion in the opinions of the question involved here. Other courts have imposed such conditions in transfer decisions, although this Court has not discovered one involving payment imposed upon a seaman plaintiff. *See, e. g.*, Solomon v. Continental American Life Insurance Co., *supra*, 472 F.2d at 1047–1048; Allied Petro-Products, Inc. v. Maryland Casualty Co., 201 F.Supp. 694, 696 (E.D.Pa.1961).

In deciding this question, the threshold question is how "all Courts of the United States" in 28 U.S.C. § 1916 should be interpreted. In regard to the United States District Court, the question is whether this language is broad enough to apply the statutory prohibition to a particular district or division of the United States District Court or whether the prohibition should not apply to particular districts or divisions so long as the plaintiff can proceed unencumbered in a particular district and thus have access to the United States District Court free of the conditions prohibited by 28 U.S.C. § 1916. The language is certainly reasonably susceptible of the former interpretation. If such were the case, there would be an irreconcilable conflict between 28 U.S.C. § 1916 and the imposition of the prohibited conditions on a plaintiff-seaman, as a condition of non-transfer, by authority of the discretion possessed by the Court under 28 U.S.C. § 1404(a). In that event, the specific provision of 28 U.S.C. § 1916 should control over the general

provision of 28 U.S.C. § 1404(a). *Compare,* Thielebeule v. M/S Nordsee Pilot, *supra*; Adamowski v. Bard, *supra*. However, it may be argued that to require the conditions requested here does not hamper a seaman in his access to the United States District Court but only affects his choice as to the particular district in which to bring his action. In addition, the increased cost to a defendant by non-transfer may be relevant to the convenience of the party-defendant and, in a particular case, conditions such as that requested here may be appropriate.

Such a conclusion, however, would not be free from doubt. The case for impairing a plaintiff-seaman's choice of forum would have to be a strong one in light of the policy against burdening such plaintiffs with prepayment of costs or posting security therefor. Of course, if a defendant has made a sufficient showing to justify transfer, the seaman's action should simply be transferred. Doubt exists as to whether a situation will arise where the facts do not warrant transfer but are sufficient to burden a plaintiff seaman with prepayment of and posting security for a defendant's costs.

This Court did not have to reach that issue in this case.

First, when the Court entered its order denying the defendant's motion to transfer, it had determined that the case was not appropriate for transfer. The defendants at that time had not requested a prepayment or security for costs condition in the transfer decision. Thus, the Court did not consider that factor in the balance. Nonetheless, even after presentation of its motion of security for costs, the Court is of the same opinion. However, for such a request to even be considered it must be made in connection with the motion to transfer. In such a context, such conditions might be imposed to balance the interest of justice in a close case, should it arise, at which time it would be necessary to face the issue discussed above.

 Second, the fact the motion for entry of security was made long after the motion for transfer precludes the granting of such request for another reason. The Court's authority to impose the type of conditions as requested here vests in a District Court by virtue of the discretion vested in it under 28 U.S. C. § 1404(a). The defendants seek an award of expenses as costs, at least in part, beyond that to which they would ordinarily be entitled. Solomon v. Continental Life Insurance Co., *supra,* 472 F.2d at 1044, 1047–1048. Since the transfer decision was already made, prior to the security motion, the Court could not at that later time draw on its discretionary authority under 28 U.S.C. § 1404(a) in awarding such expenses as costs or security therefor.

 Finally, the defendants, in their motion for security, made no showing as to why they would not be able to satisfy a judgment for costs entered against this particular plaintiff. They do state: "Unfortunately, it is defendants' counsel's experience in actions filed by seamen who live outside of the Eastern District of Pennsylvania, that defendant's taxable costs cannot be recovered in the event that defendant prevails." [20] This Court is unwilling to draw the inference which the defendants desire as to this particular plaintiff-seaman on the basis of defendants' broad unsworn generalization.

Thus, for the reasons set out above, this Court thinks it improper to grant the defendants' motion for security.

20. Defendant's Reply To Plaintiff's Brief Contra To Defendant's Motion For Security, page 3.