832 P.2d 289

**In re the General Adjudication of Rights to the Use of Water From the Snake River Basin Water System.**

**State of Idaho, ex rel. R. Keith Higginson, in his official capacity as Director of the IDAHO DEPARTMENT OF WATER RESOURCES, Plaintiff–Respondent,**

v.

**UNITED STATES of America, Defendant–Appellant,**

and

**Idaho Power Company, Twin Falls Canal Company, North Side Canal Company, Defendants–Respondents.**

No. 19407.

Supreme Court of Idaho,
Boise, January 1992 Term.

March 30, 1992.

ereign immunity from the payment of filing fees.

Maurice O. Ellsworth, U.S. Atty., and Warren S. Derbidge, Asst. U.S. Atty., Boise, and William B. Lazarus, Dept. of Justice (argued), Washington, D.C., for appellant U.S.

Larry J. EchoHawk, Atty. Gen., and Clive J. Strong, Deputy Atty. Gen. (argued), for respondent Idaho Dept. of Water Resources.

Rosholt, Robertson & Tucker, James C. Tucker (argued), Twin Falls, for respondents Idaho Power Co., Twin Falls Canal Co., and North Side Canal Co.

McDEVITT, Justice.

This case arises out of the Snake River Basin Adjudication. The United States filed a Petition for a Writ of Mandamus, requesting the district court to issue an order requiring the director of the Idaho Department of Water Resources (the agency in charge of receiving notice of claims to water rights in the adjudication) to accept the filing of the United States' Notices of Claims to a Water Right without payment of the required filing fees. The district court denied the petition. We affirm.

The Snake River Basin Adjudication ("SRBA") is being conducted pursuant to I.C. § 42–1406A. On June 30, 1989, the United States of America filed a petition for a Writ of Mandamus, or alternatively, declaratory or injunctive relief. The United States sought an order from the district court requiring the director of the Idaho Department of Water Resources ("the director") to accept the filing of its claims without payment of the filing fees as required by I.C. § 42–1414. The United States contends that the McCarran Amendment, 43 U.S.C. § 666, does not waive sov-

Subsequent to the filing of the petition, on July 6, 1989, the United States submitted its Notices of Claim to a Water Right on behalf of the Bureau of Reclamation and the Department of the Interior without payment of the filing fees to the director. The director refused to file the notices of claims. On July 10, 1989, the district court entered an order requiring the director to accept the notices for lodging, but not for filing.

The district court required the United States to submit a list of issues to be litigated concerning the issue of filing fees. Several motions for summary judgment were filed by the parties. The trial court issued two separate memorandum opinions. The first was filed December 27, 1990. The district court also granted the State's Motion for Summary Judgment as to several issues and then limited the issues to be considered at trial. The remaining issues were tried to the district court without a jury, after which, the district court denied the United States' petition for a Writ of Mandamus. From this denial the United States appeals.

## ISSUE ON APPEAL

DOES THE McCARRAN AMENDMENT, 43 U.S.C. § 666, ALLOW THE STATE OF IDAHO TO COLLECT FILING FEES FROM THE UNITED STATES FOR CLAIMS FILED IN THE SNAKE RIVER BASIN ADJUDICATION?

█ A little background on the SRBA and on general water adjudications in the State of Idaho is helpful in understanding the dispute between the parties. In 1985, the Idaho Legislature passed I.C. § 42–1406A.[1] This statute required the director

---

1. Idaho Code § 42–1406A provides in part:
   **Snake River Basin Adjudication—Commencement.**—(1) Effective management in the public interest of the waters of the Snake River basin requires that a comprehensive determination of the nature, extent and priority of the rights of all users of surface and ground water from that system be determined. Therefore, the director of the depart-

   ment of water resources shall petition the district court to commence an adjudication within the terms of the McCarran amendment, 43 U.S.C. section 666, of the water rights of the Snake River basin either through initiation of a new proceeding or the enlargement of an ongoing adjudication proceeding. The petition shall describe:

to file a petition in district court to commence an adjudication of the water of the Snake River Basin. The director filed a petition seeking a court order commencing the adjudication in the district court on June 17, 1987. In this petition, the director named the United States and all other water users as defendants. The district court entered an order on October 14, 1987, commencing the Snake River Basin Adjudication. This Court then affirmed the district court's order commencing the adjudication. *In re Snake River Basin Water Sys.*, 115 Idaho 1, 764 P.2d 78 (1988), *cert. denied, Boise–Kuna Irri. Dist. v. United States,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

Once the district court entered the order commencing the adjudication, Idaho statutes provide the procedure to be followed in the adjudication. Idaho Code § 42–1406A(2) required the director to perform an investigation to determine the various water rights among the water users of the Snake River Basin. Idaho Code §§ 42–1408 and 42–1408A instruct the director to prepare a notice and to serve notice upon all claimants. Claimants are then required by I.C. § 42–1409 to file Notices of Claim to a Water Right with the director. Idaho Code § 42–1414 sets the filing fees to be paid at the time of filing the Notice of Claim to a Water Right. The director then must investigate each separate claim. After investigating all claims, I.C. § 42–1411

requires the director to prepare a report determining what rights have been acquired under state law and then to file this report with the district court. Idaho Code § 42–1412 allows any claimant to object to any portion of the director's report. The district court then proceeds to trial on any contested matters. *Id.* Those portions of the director's report that receive no objection are admitted as true. I.C. § 42–1412(9). The district court then enters the final decree determining the water rights of each claimant. I.C. § 42–1413.

The United States contends that the McCarran Amendment, 43 U.S.C. § 666, which waives the United States' immunity from suit in water adjudications, does not waive immunity from filing fees. On the other hand, the State of Idaho asserts that the plain language of the McCarran Amendment waives any obstruction to the payment of filing fees. The State of Idaho asserts that the issue of whether the McCarran Amendment waives immunity to filing fees has been previously adjudicated in *United States v. Oregon Water Resources Dep't,* 774 F.Supp. 1568 (D.Or. 1991); *In re the General Adjudication of all Rights to Use Water on the Big Horn River Sys.,* 753 P.2d 76 (Wyo.1988), *affirmed by an equally divided court,* 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342 (1989); and, *United States v. City & County of Denver,* 656 P.2d 1 (Colo.1983).

(a) The boundaries of the system within the state to be adjudicated;

(b) Any class of water users within the system and the boundaries of any hydrologic sub-basins within the system for which the director intends to proceed separately with respect to the actions required or authorized to be taken pursuant to sections 42–1408 through 42–1414, Idaho Code; and

(c) The uses of water, if any, within the system that are recommended to be excluded from the adjudication proceeding.

(2) Upon issuance of an order by the district court which:

(a) Authorizes the director to commence an investigation and determination of the various water rights to be adjudicated within the system;

(b) Defines the boundaries of the system within the state to be adjudicated;

(c) Defines the classes of water users within the system and the boundaries of any hydro-

logic sub-basins within the system for which proceedings may advance separately pursuant to section 42–1408 through 42–1414, Idaho Code; and,

(d) Defines any uses of water excluded from the adjudication proceedings; the adjudication shall proceed in the manner provided under the provisions of chapter 14, title 42, Idaho Code, with the exception of sections 42–1406 and 42–1407, Idaho Code.

(3) In exercising his authority under subsection (1) of this section, the director of the department of water resources:

(a) Shall petition the district court to commence an adjudication of the water rights of all of the Snake River basin within the state of Idaho upstream from the point at which the Snake River leaves the state of Idaho and enters the state of Oregon in section 14, township 4 north, range 6 west, Boise Meridian . . .

These cases fail to fully address the contentions of the United States, therefore, we deem it necessary to discuss at some length the issue on appeal.

Both the United States and the State of Idaho urge that this is a "simple" case of statutory construction.

■ It is a fundamental principle of jurisprudence that the United States is immune from suit unless it consents to be sued. *Keifer & Keifer v. Reconstruction Fin. Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). This immunity extends to barring an individual state from suing the United States unless the federal government consents to such suit. *Minnesota v. United States,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). Only the United States Congress can grant such consent to be sued. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Morrison v. Work,* 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394 (1925). Absent a waiver of sovereign immunity by Congress, the United States cannot be sued. *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988).[2] The waiver of immunity must be expressed in the statutory text in question and not from extraneous sources. *United States v. Nordic Village, Inc.,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Dellmuth v. Muth,* 491 U.S. 223, 228–29, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

■ Once a waiver of sovereign immunity is found to exist, "those conditions must be strictly observed, and exceptions are not to be lightly implied." *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983). The extent of the waiver is not to be extended beyond the "clear and unambiguous" language of the statute. *Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976). While being careful not to enlarge a waiver of sovereign immunity beyond that which is expressed in the language

that Congress used in the statute, a court should remember the "broad and just purpose which the statute was designed to effect" to help in determining the extent of the waiver. *Indian Towing v. United States,* 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955).

*Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), involved a lawsuit involving Title VII of the Civil Rights Act of 1964. The act authorized an award of back pay and reasonable attorney fees. The act also contained the language that "the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k). The plaintiff, Shaw, prevailed in the action and was awarded attorney fees. The trial judge increased the award by 30% to compensate the attorney for the delay in receiving payment for the services rendered. The Library of Congress appealed, alleging that the increase in compensation was disguised interest and was therefore, improperly awarded. The United States Supreme Court recognized the long-standing rule that the United States was immune from an interest award. In determining whether Congress had waived immunity from interest, the Court turned to two different phrases in the statute.

First, the Court looked at the phrase, "the same as a private person." The Court determined that this phrase had to be construed with the long-standing prohibition against an interest award. The Court determined that this was not an express waiver of immunity.

The Court also declined to find a waiver of immunity in the statutory requisite of awarding "reasonable" attorney fees. The Court held that an award of interest could not be read into the term "reasonable." Without the express use of language indicating a waiver of immunity from paying interest, there could be no interest award.

I.

■ Because of a need to adjudicate *all* rights to the use of a water system, it has

---

2. Following argument, the United States Supreme Court on February 25, 1992, decided another waiver of sovereign immunity case in

*United States v. Nordic Village, Inc.,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

been held that the McCarran Amendment authorizes the adjudication of the United States' water rights, including "appropriate rights, riparian rights, and reserved rights." [3] *United States v. District Ct., County of Eagle, Colo.,* 401 U.S. 520, 524, 91 S.Ct. 998, 1002, 28 L.Ed.2d 278 (1971). An adjudication contemplates more than just determining those rights acquired by appropriation, but all rights, however acquired or reserved, to use water from a water system.

Being cognizant of these well-established principles, we turn to the act of Congress involved in this case. The pertinent statute is 43 U.S.C. § 666(a), which states:

> Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

The United States correctly asserts that the first sentence of the McCarran Amendment waives any objection by the United States that it is immune from joinder in water adjudications. The United States asserts that the language of the first sentence:

> where it appears that the United States is the owner of or is in the process of acquiring water rights *by appropriation under State law,* by purchase, by exchange, *or otherwise,* and the United States is a necessary party to such suit.

43 U.S.C. § 666(a) (emphasis added), must be read in conjunction with the second sentence. The second sentence reads in part:

> The United States, when a party to any such suit, shall (1) be deemed to have waived any right *to plead* that *the* State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, ...

43 U.S.C. § 666(a) (emphasis added). The United States argues that the use of the term "plead" indicates that the provision applies to legal defenses and that "the State laws" of the second sentence refers back to the phrase "appropriation under State law" contained in the first sentence. Reading these two phrases together, the United States maintains that the provision simply bars the United States from claiming that *the laws pertaining to appropriation under state law* are inapplicable, and that this language does not waive immunity from paying filing fees. The United States asserts that if Congress had intended to waive immunity to filing fees, it would be necessary for Congress to use the term "all" instead of the term "the."

This argument fails for several reasons. First, the term "any such suit" contained in the second sentence has to refer to the "defendant in any suit" language of the first sentence. The McCarran Amendment

---

**3.** "Reserved" rights are those rights reserved, either expressly or impliedly, by the United States and are exempt from appropriation. *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). Generally, these rights consist of those rights reserved by treaty with the Indians. *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983); *see also In re Rights to Use Water in Big Horn River,* 753 P.2d 76 (Wyo.1988), *aff'd by an equally divided court,* 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342 (1989); *State ex rel. Reynolds v. Lewis,* 88 N.M. 636, 545 P.2d 1014 (1976). But these rights also include those obtained by the U.S. prior to granting Statehood to a territory by the riparian doctrine or for the purpose of maintaining navigable stream flows, *United States v. Rio Grande Dam & Irri. Co.,* 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136 (1899); and other rights created by the U.S. when it held land as a territory. *United States v. Winans,* 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089 (1905).

defines any suit as a "suit (1) for the adjudication of rights to the use water of a river system or other source, or (2) for the administration of such rights." Subjecting the United States to these types of suits would necessarily subject the United States to those state laws necessary to carry out these types of suits, as they entail more than just mere appropriation. Congress recognized a need to allow the States to control the adjudication. To hold otherwise would allow the United States to plead immunity from those procedural rules contained in the statute and any other rule or statute pertaining to a water adjudication or administration suit, but not directly pertaining to the appropriation of water, that the United States found inconvenient or objectionable. This would then allow the federal government to control the process of adjudication and not the individual states, which is contrary to the clear language of 43 U.S.C. § 666(a).

Second, the suggestion that Congress needed to use the word "all" to indicate a waiver of immunity from filing fees leads to an absurd result. The use of the term "all State laws" would subject the federal government to all state laws, not just those laws necessary for the adjudication or administration of water use. This would be a much broader waiver than necessary or contemplated by the statute, and would also subject the United States to determination of issues other than water rights and runs afoul of the recent holding of the United States Supreme Court in *United States v. Nordic Village, Inc.*, — U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

Congress, in 43 U.S.C. § 666(a), when referring to "appropriation under state law, by purchase, by exchange, or otherwise," uses the word "law" in its singular form, but when referring to the "United States as a party to such suit" (an adjudication) uses the plural word "laws." This language selection clearly subjects the United States to all laws concerning an "adjudication," not just the law of appropriation. As previously stated, if the United

States were only subject to the law of appropriation, and not the laws concerning a suit for adjudication or administration, the federal government would then be able to plead immunity and effectively control the adjudication. This is contrary to the clear language of the statute.

The United States Supreme Court in *Nordic Village*, found sections 106(a) and (b) of the Bankruptcy Code to *clearly express* a waiver of immunity by the United States as to "monetary liability." The language of 43 U.S.C. § 666(a), just as plainly as the Bankruptcy Code did in 106(a) and (b), express a "clear intent" of congress to subject the United States to all of the state court processes of an "adjudication" of its water rights with the sole exception of costs.

The employment of alternative statutory construction techniques is not required in analyzing 43 U.S.C. § 666(a) unless it is for the purpose of attempting to strain the plain statutory language to reach some preordained result.

No hypothetical, no alternate construction technique, can limit or alter the clear waiver of immunity of 43 U.S.C. § 666(a), nor cause "costs" to mean "filing fees."

## II.

As another basis to support immunity from filing fees, the United States asserts that at the time the McCarran Amendment was passed, the western states allowed a judgment for costs at the end of litigation, but did not impose a filing fee. While it is true that each of the fourteen western states had some provision for shifting costs at the end of litigation, at least six did charge a fee for filing a notice of claim.[4] It is interesting to note the filing fee schedule of the state of Nevada, Senator McCarran's home state. Nevada had a variable filing fee schedule very similar to I.C. § 42–1414. Therefore, Congress could not have contemplated that no filing fees were being charged. Additionally, *Nordic Village* instructs us not to look to extraneous matters to find a clear waiver. To follow

---

4. Arizona, California, Colorado, Nevada, Oregon, and Washington.

this path urged by the United States in this case would be error.

## III.

■ Next, the United States argues that the filing fee imposed by the state is a disguised judgment for costs. There is a tendency to confuse the terms fees and costs; and although often used indiscriminately, the two terms are distinguishable. *Galpin v. City of Chicago*, 159 Ill.App. 135 (1910), *aff'd*, 249 Ill. 554, 94 N.E. 961 (1911). Each term has a peculiar and separate meaning in the law. *Parks v. Sutton*, 60 Utah 356, 208 P. 511 (1922). It has long been recognized that "costs" is a term of known legal significance and differs from "fees." *Alexander v. Harrison*, 2 Ind. App. 47, 28 N.E. 119 (1891). "Costs" are a pecuniary allowance or a reimbursement made to the prevailing party in a lawsuit and are recoverable from the losing party. *Weiner v. Swales*, 217 Md. 123, 141 A.2d 749 (1958). Costs are sometimes referred to as incidental damages and are awarded to indemnify or reimburse a party for expenses incurred. *Hayman v. Morris*, 37 N.Y.S.2d 884 (1942); *People v. Goulding*, 275 Mich. 353, 266 N.W. 378 (1936). Costs are usually awarded upon a final determination of the litigation. *Foley v. Carter*, 214 A.D. 292, 212 N.Y.S. 381 (1925).

■ "Fees" on the other hand, are distinguishable from costs. *Clay v. Overseas Carriers Corp.* 61 F.R.D. 325 (D.Penn.1973). In its usual and ordinary context, a fee is a charge for a privilege or a service under the control of the government, *City of Kettering v. Berger*, 4 Ohio App.3d 254, 448 N.E.2d 458 (1982), such as a filing fee. *People v. Goulding*, 275 Mich. 353, 266 N.W. 378 (1936). Fees do not come within the term costs. *In re Terry*, 67 Misc. 514, 123 N.Y.S. 258 (1911). While costs are the charges that a party may recover from the opponent, fees are those amounts paid to the court. *Copper Liquor v. Adolph Coors Co.*, 684 F.2d 1087 (5th Cir.1982). Stated simply, fees are compensation paid to an officer, such as the court, for services rendered to individuals in the course of litigation. *Bradley v. State*, 69

Ala. 318 (1881); *Tillman v. Wood*, 58 Ala. 578 (1877).

An interesting case that illustrates the difference between a fee and costs is *Bohart v. Anderson*, 24 Okla. 82, 103 P. 742 (1909). In *Bohart*, counsel for plaintiff wished to file a petition without paying the required filing fee. Instead, plaintiff's counsel wished to post a bond for costs in case his petition was unsuccessful. In denying counsel's request, the Oklahoma Supreme Court stated that there is a well recognized difference between costs and fees. While costs are an allowance to the prevailing party, fees are an expense payable to the court in advance. The court held that without payment of the filing fees, the clerk of the court could lawfully withhold his or her services until the fee was paid.

We decline to read the term judgment for costs as including the term filing fees. Each term has a plain and ordinary meaning in the law, and each term had been in use in and applied in its plain meaning in the western states when Congress passed the McCarran Amendment.

The United States places emphasis on the fact that the Department of Water Resources is the party initiating the instant suit and the United States is a defendant. Thus, the United States asserts that the expenses incurred by the Department of Water Resources in performing the adjudication are actually "costs" incurred by a party litigant. This argument misses the mark. A general water adjudication brought by the state is analogous to an interpleader action. *United States v. Bluewater–Toltec Irri. Dist.*, 580 F.Supp. 1434 (D.N.M.1984) *aff'd sub nom., United States on behalf of Acoma & Laguna Indian Pueblos v. Bluewater–Toltec Irri. Dist.*, 806 F.2d 986 (10th Cir.1986). The position of the director of the Department of Water Resources is analogous to the "stakeholder" in an interpleader action. The director is really a disinterested party. The only interest the director has is to see that all rights are accurately adjudicated. The director does not oppose a claim, trying to subvert a valid claim. Nor does the

director stand to gain if a claim is invalidated. "The United States has entered the suit asking that its rights be determined." *New Mexico v. Molybdenum Corp. of Am.*, 570 F.2d 1364, 1366 (10th Cir.1978). Thus, the United States is "a water applicant" or claimant seeking affirmative relief from the state and not a "defendant." *United States v. Bell*, 724 P.2d 631, 647 (Colo.1986) (Erickson, J., specially concurring). We determine this argument to be without merit.

### IV.

The final argument that the United States makes concerns an asserted conflict within the Idaho Code. The United States asserts that I.C. § 42–1408A(1)(j), which deals with the contents of the notice of order commencing the general adjudication, exempts the federal government from paying filing fees. Idaho Code § 42–1408A(1)(j) states:

> [S]ection 42–1414, Idaho Code, requires each claimant, other than those exempted by federal law, to pay a variable fee with a notice of claim; failure to pay the fee will result in rejection of the notice of claim; failure to file a timely notice of claim will result in the assessment of a late fee in the amount of fifty dollars ($50.00) or fifteen per cent (15%) of the original filing fee, whichever is greater.

It is asserted that this language conflicts with I.C. § 42–1414 which states:

> [T]he department of water resources shall accept no notice of claim required under the provisions of section 42–1409, Idaho Code, unless such notice of claim is submitted with a filing fee based upon the fee schedule set forth below. Failure to pay the variable water use fee in accordance with the timetable provided shall be cause for the department to reject and return the notice of claim to the claimant.

The United States urges that § 42–1408 recognizes that the federal government is exempt from filing fees. In support of this

argument, the United States points to portions of the Idaho State Legislative Advisory Committee report regarding the filing fees. In the committee report, an economist commented that the federal government could be exempt from paying filing fees. We find no merit in the federal government's contention. The plain language of I.C. § 42–1414 imposes a filing fee upon all claimants, there is no exception for the United States to be exempted from its provisions. Idaho Code § 42–1408A(1)(j) does not affect the obligation imposed by I.C. § 42–1414 of paying filing fees upon the filing of a "Notice of Claim to a Water Right."

### V.

For historical purposes only and not as a basis for construing 43 U.S.C. 666(a), we note the following. Congress, in passing 43 U.S.C. 666(a), recognized that:

> In the arid Western States, for more than 80 years, the law has been that the water above and beneath the surface of the ground belongs to the public, and the right to use thereof is to be acquired from the State in which it is found, which State is vested with the primary control thereof.
>
> In 1877 the Congress, in the Desert Land Act of 1877 (19 Stat.L. 377, Ch. 107), severed the water from the land, and the effect of such statute was thereafter that the land should be patented by the United States separate and apart from the water and that all the nonnavigable water should be reserved for the use of the public under the laws of the States and Territories named in the act ...

S.Rep. No. 755, 82d Cong., 1st Sess., 3 (1951).

■ Thus, the Desert Land Act of 1877 [5], recognizes the right of the western states [6] to legislate the appropriation of the waters within its borders. *California Oregon Power Co. v. Beaver Portland C. Co.*, 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356 (1935).

---

**5.** 43 U.S.C. § 321 *et seq.*

**6.** California, Colorado, Oregon, Nevada, Washington, Idaho, Montana, Utah, Wyoming, Arizona, New Mexico, and North and South Dakota. 43 U.S.C. § 323.

While the basics of the doctrine of prior appropriation is the same from state to state, the doctrine has evolved to meet the specific needs of each state and thus differs among the western states. *The Doctrine of Prior Appropriation and the Changing West* (Report of the Western States Water Council, 1987). Congress understood this fact and that is why the laws concerning appropriation were left up to each individual state.

It is also clear that Congress envisioned the anarchy that would ensue if the United States were immune from suit in adjudication cases. Congress realized:

It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings. In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State Courts.... The bill (S. 18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity. The committee believes that such a situation cannot help but result in a chaotic condition.

S.Rep. No. 755, 82d Cong., 1st Sess. 4–5 (1951). As Congress realized, under the law of prior appropriation, all water users are interrelated. The amount of water one user consumes affects the amount of water available for other water users. If the United States had remained immune, a water adjudication would serve no useful purpose. If the state was unable to include the United States, there would be no way to determine the rights of private users.

## CONCLUSION

We hold that the McCarran Amendment waives sovereign immunity and subjects the United States to the laws of Idaho in the Snake River Basin Adjudication including the payment of filing fees. Therefore, we affirm the ruling of the district court denying the petition of the United States.

No costs on appeal.

BAKES, C.J., and BISTLINE, J., concur.

BISTLINE, Justice, concurring in the opinion of McDEVITT, Justice.

### I.

In this past week this Court has received from the Supreme Court of the United States its recent opinions in *United States v. Nordic Village, Inc.,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). That opinion appears to be pertinent to the above entitled case which this Court has had under consideration since we heard oral argument in January 1992. As is readily observed, Justice McDevitt has expressed his views in writing what may become the majority opinion. Justice Johnson has favored the members of the Court with his differing views as has Justice Boyle. A reasonable inquiry is to ascertain what effect, if any, *Nordic Village* has on the controversy still before us.

Initially it is to be noted that this Court's opinions in *In re Snake River Basin Water System,* 115 Idaho 1, 764 P.2d 78 (1988), show that Justice Johnson wrote the opinion for the Court. Although three justices joined that opinion, I wrote a sole dissenting opinion at 115 Idaho at 10–11, 764 P.2d

at 88–89. The views which I expressed were mine and mine alone. Now, when the majority of four justices appears to be presently not all of the same mind in regard to the sequel *Snake River Basin* controversy now before us, and with *Nordic Village* now at hand, it is in order that my views be expressed for what they may be worth.

Rather than recapitulate or synopsize, perhaps it is better that my short opinion written in 1988 be displayed for the benefit of interested readers. In doing so, those paragraphs which to my mind are the more applicable are emphasized:

The claim of the irrigation districts and the water districts, and the user members thereof, as I understand the claim to be, is not that they assert any new water rights, but simply challenge the right of the state of Idaho in the person of its legislature to cause to be relitigated that which has been litigated, or to readjudicate that which has been adjudicated and gone to a final judgment.

It has been held that a water right is a property right. An adjudicated water right is a highly perfected water right. It is the decree or judgment of a state district court, and once wholly final is subject to no attack other than that it was fraudulently obtained. The McCarran Report, partially reprinted in the majority opinion, 115 Idaho at 7–8, 764 P.2d at 84–85, acknowledges that 'the State courts are vested with the jurisdiction necessary and proper ... for the administration of and adjudication of water rights under state laws.' This has always been my understanding. I agree with the Report in the statement that *in practically every case all water users on a stream are interested parties to any court proceeding.* I am not persuaded that all such water users *are necessary parties* in all cases, in the sense that the action cannot proceed without a state court (here, Idaho) gaining jurisdiction over them. A water user having a valid state judicial decree in his pocket, meaning one that flows from a valid court decree, will be interested, of course, but not necessarily a necessary party. Else, why, one might ask, what has he gained by having once successfully litigated, if into litigation once again he will be forced?

The pertinent portion of the McCarran Report, 115 Idaho at 7, 764 P.2d at 84, as I comprehend its language, is that it has in mind only those water users claiming a water right by reason of the ownership of the United States or any of its departments who seek to don the cloak of immunity which does shield the United States of America. The McCarran Act itself shreds that assumed cloak.

I take no umbrage with the final paragraph of the Report which is reprinted in the majority opinion, 115 Idaho at 7, 764 P.2d at 84, *i.e.,* 'that it is essential that each and every owner *along a given water course,* including the United States, must be amenable to the law of the State, ...' My understanding is that prior litigation on the tributaries of the Snake River afforded all owners on those rivers or streams the opportunity to be involved. If the opportunity to litigate was present but eschewed, the litigation is nevertheless as final as to those who did not chose to participate as to those who did so. Such an action was basically *in rem.*

The McCarran Act undoubtedly is, as Justice Johnson has written, a Congressional waiver of otherwise unassailable federal immunity as to actions for stream adjudications brought in Idaho courts. The so-called 'special appearance' of the United States District Attorney for Idaho is in my view of no consequence. The law heretofore has been that the United States can only be sued by its consent, and if district attorneys are freely empowered to give or withhold that consent, I am woefully ignorant of that change. As for my part, until I become better informed, the United States of America, and each and all of its departments, agencies, bureaus, and whatever, are in court because of the McCarran Act, or, conversely, are not in court because of that Act's inapplicability, which I much doubt, and on which

issue I agree with Justice Johnson's opinion.

*But, accepting that the United States may be subject to jurisdiction of an Idaho state district court, I am left wondering how that conclusion necessitates a holding that water right users possessing valid judgments or decrees and, probably valid water rights of any degree, can be brought into this action against their will.*

*As mentioned above, it can be said confidently without citation that an adjudicated water right is a property right. Like any other property, it can be forfeited or abandoned, but there is no such claim here. Like any other property, it can be taken by such authorities as have the power of eminent domain, but a just compensation must be paid therefore.*

Although feeling not obliged to search for authority in that vein, a study of Justice Johnson's opinion reassures me when I read on page 14 of the slip opinion his ten line excerpt from *California v. Rank*, 293 F.2d 340[ (9th Cir.1961) ], in which litigation the state of California was positioned as is Idaho in this litigation, *i.e.*, the defendant. The plaintiffs in that action were owners of the beneficial use of the river of the San Joaquin River below the dam. The United States over its protest was joined as a necessary party defendant.

*What I make out of reading that case as it definitely has application to the case at hand, is that '... the United States has the power to acquire the rights of these plaintiffs through exercise of eminent domain.' Rank, 293 F.2d at 354. And, '[w]hile a state can bestow property rights on its citizens which the United States must respect, it cannot take from the United States the power to acquire those rights.' Id. at*

*354. Presently, the United States of America is not attempting to seize or otherwise appropriate any property rights. In fact, all that we see is the claim of the United States District Attorney, Idaho, that the United States is not in court.*

*I am unable to see the grounds upon which the state of Idaho can force the owners of valid water rights to litigate that which is res judicata. Nor do I understand how the legislature can purport to authorize such. The legislature is prohibited by two constitutions from impairing the obligation of contract, and in my humble view, an adjudicated water right, especially one with whiskers, is on an even higher plane than a contract.*

Until better informed, I must respectfully dissent, and am deeply concerned with the plight which the state of Idaho has brought down on the innocent owners of water rights in Idaho. Those water rights are not free-hanging merchandise like tires and beer, but are appurtenant to lands which lands for the most part would be greatly devalued without water rights. To make such owners parties to this litigation is tantamount to an impermissible restraint on the right of free alienability of land.

*In re Snake River Basin Water System*, 115 Idaho at 10–11, 764 P.2d at 88–89 (emphasis in original and added).

## II.

With the foregoing background out of the way, turning first to Justice McDevitt's opinion, correctly noted therein is the genesis of this on-going litigation, *i.e.*, the 1985 legislature's enactment of I.C. § 42–1406A, most provisions of which the reader will find displayed in footnote 2 of Justice McDevitt's opinion.[7] Justice McDevitt, fol-

---

**7.** Omitted therefrom immediately following I.C. § 42–1406A(1) and (2), is (3)(b) which mandates that the director "[m]ay petition the district court to commence an adjudication of the water rights of the main stem of the Snake River which forms the boundary between the state of Idaho and the states of Oregon and Washington.

The director may include within his petition under this paragraph any unadjudicated tributaries. The director shall not include in the petition filed under this paragraph any adjudicated tributary unless the United States, or other parties who consent is necessary, refuse to consent to the jurisdiction of the district court

lowing his review of applicable law, reaches the conclusion that the United States is required to pay a filing fee to the clerk of the district court. In other words, immunity from paying fees has been waived. Presently I am not persuaded of any error in his analysis.

### III.

Finally, turning to the *Nordic Village* opinions which we recently received, once again I find that those two highly esteemed jurists on the United States Supreme Court, Justice Stevens and Justice Blackmun, have provided the necessary guidance. First, their dissent nicely brings attention to what the majority has done in the area of sovereign immunity:

> An officer of an insolvent corporation appropriated corporate funds and used them to discharge a personal tax obligation. Because the Federal Government was the ultimate recipient of the stolen property, the Court holds that the bankruptcy trustee cannot avoid the transfer. The interest in a rigid interpretation of the doctrine of sovereign immunity outweighs the interest in equitable treatment of general creditors and shareholders of the corporate debtor. This result is neither necessary nor just.

*Nordic Village*, —— U.S. at ——, 112 S.Ct. at 1017–18 (Stevens, J. dissenting). Their assessment that the Court, speaking through the opinion of Justice Scalia, condones an injustice is readily accepted, as is also true of the statement that the Court's interest in a rigid interpretation of the doctrine of sovereign immunity does not outweigh the equitable treatment of general creditors and shareholders of the corporate debtor. The Court evades this conclusion by hypothesizing "plausible" alternatives of the statute, by refusing to consider its legislative history, and by reiterating the Court's view that waivers of immunity must be strictly construed.

The entire content of the opinion with its veritable footnote history of criticisms of the doctrine of sovereign immunity is well worth the reading. The views of Justices Stevens and Blackmun are well-stated and convincing. Presently, although the controversy laid before us comes in the context of a huge adjudication of water rights, and is not a bankruptcy outgrowth, my regard for the views of Justices Stevens and Blackmun, guide me to agree with Justice McDevitt, who has appropriately reached the correct conclusion.

QUAERE: Is this action, which arose in state district court and is now pending in this Court, such a suit as is contemplated in § 666, 43 U.S.C., *California v. Rank*, 293 F.2d 340 (9th Cir.1961)? [8]

ANSWER: It so appears to be. Accordingly I concur in Justice McDevitt's opinion.

JOHNSON, Justice, dissenting.

I must respectfully dissent from the Court's opinion. In my view, by the McCarran Amendment the United States did not waive its sovereign immunity to the payment of "filing fees" in the SRBA.

Let us not becloud what the issue is here. The "filing fees" the state seeks to charge the United States are not the usual modest fees for filing pleadings in a lawsuit. The "filing fees" at issue here exceeds TEN MILLION DOLLARS! Of this amount, eight and one-half million dollars represent "filing fees" for the adjudication of "reserved" rights, which are described in footnote 3 of the Court's opinion.

Although the United States has not premised its appeal on the applicability of the filing fee requirement to these reserved rights, the "Adjudication Rules and Regulations" of the Department of Water Resources require payment of filing fees only by "[a]ll persons filing claims to water rights acquired under state law or amendments to claims to water rights acquired

---

to adjudicate all federal or Indian water rights claims pursuant to the McCarran amendment, 43 U.S.C. section 666."

**8.** Action there was initiated in state district court, and on defendants' motion removed to

the United States District Court under the provisions of 2 U.S.C. 1441(a) *Rank v. Krug,* 90 F.Supp. 773 (S.D.Cal.1950).

under state law." Reserved rights by their nature are not acquired under state law.

What is at issue here is requiring the United States to fund involuntarily a significant part of the cost of the SRBA, that was occasioned by the dilemma created by the decision of this Court in *Idaho Power Co. v. State of Idaho*, 104 Idaho 575, 661 P.2d 741 (1983). *In re Snake River Basin Water System*, 115 Idaho 1, 764 P.2d 78 (1988), gives a brief history of how the SRBA came into being. The long and short of it is that the Idaho Power Company and the State of Idaho set the SRBA in motion. The United States is just along for the ride, pursuant to the McCarran Amendment.

By this decision, the Court rules that the United States must pay these "filing fees" to help the Idaho Power Company and the State of Idaho carry out the SRBA. The Court's opinion says the "filing fees" are not "costs," which are prohibited by the McCarran Amendment. "Rose is a rose is a rose is a rose is a rose." Gertrude Stein, "Sacred Emily," *The Oxford Book of American Light Verse*, p. 293 (W. Harmon ed., Oxford University Press 1979).

By the McCarran Amendment, the United States consented to joinder as a defendant in a "general adjudication." *In re Snake River Basin Water System*, 115 Idaho at 6–9, 764 P.2d at 84–87. The plain reading of the McCarran Amendment indicates that the United States did not waive its sovereign immunity to the payment of costs. The Court's attempted distinction between "filing fees" and "costs" would be more persuasive if these were, in fact, filing fees. These "filing fees" are nothing more nor less than the State's costs for conducting the SRBA. By the McCarran Amendment, the United States waived its sovereign immunity only so far as being joined as a defendant, not so far as involuntarily paying the costs of the litigation.

BOYLE, Justice, dissenting.

I agree with the majority that "[a]bsent a waiver of sovereign immunity by Congress, the United States cannot be sued," *ante* at 292 (citing *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988)), and that the conditions of a waiver "must be strictly observed, and exceptions are not to be lightly implied." *Ante* at 292 (quoting *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983)). I also agree with the majority that the extent of any waiver must be articulated in the "clear and unambiguous" language of the statute. *See ante* at 292 (citing *Hancock v. Train*, 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976)). However, in my view, the majority does not correctly apply the United States Supreme Court's test for determining whether the statutory waiver of sovereign immunity in the instant case is "clear and unambiguous." As a result, the majority reaches a conclusion which is at odds with the Supreme Court's recent pronouncements. Accordingly, I respectfully dissent.

In *United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), the most recent pronouncement on the issue of statutory waivers of sovereign immunity, the Supreme Court clarified that its "clear statement" rule has two components. A statutory waiver must be grounded exclusively upon the statutory text (the textual requirement) and the waiver must be "unequivocal" (the unequivocal requirement). *See id.* at ——, 112 S.Ct. at 1016 (citing *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (Eleventh Amendment case) and *Dellmuth v. Muth*, 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989) (Eleventh Amendment case)). These two requirements have been developed from an impressive number of recent opinions in both the context of statutory waivers of federal government immunity, *see, e.g., Ardestani v. INS*, 502 U.S. ——, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), and in the context of state sovereign immunity protected by the Eleventh Amendment, *see, e.g., Blatchford v. Native Village of Noatak*, 501 U.S. ——,

111 S.Ct. 2578, 115 L.Ed.2d 686 (1991); *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *Dellmuth v. Muth,* 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989); *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), as well as in other contexts, *see, e.g., Gregory v. Ashcroft,* — U.S. —, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Although I candidly admire the skillful attempt by the majority opinion to make *Nordic Village* appear to support its position, it simply does not.

The textual requirement simply means that all evidence of a purported waiver of sovereign immunity must be found exclusively within the statutory text. The Court in *Nordic Village* defined this requirement from its cases in the Eleventh Amendment context. The Court stated,

> Contrary to respondent's suggestion, *legislative history has no bearing on the ambiguity [of a statute]*. As in the Eleventh Amendment context, *see Hoffman,* 492 U.S., at 104, 109 S.Ct., at 2824, the "unequivocal expression" of elimination of sovereign immunity that *we insist upon is an expression in statutory text.* If clarity does not exist there, *it cannot be supplied by a committee report. Cf. Dellmuth v. Muth,* 491 U.S. 223, 228–229, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989).

*Nordic Village,* — U.S. at —, 112 S.Ct. at 1016 (emphasis added). The Court's reference to *Dellmuth* in the above quote is instructive. In the context of the Eleventh Amendment, the Court stated that nontextual arguments were "beside the point." *Dellmuth,* 491 U.S. at 230, 109 S.Ct. at 2401. As emphasis, the Court went on:

> Our opinion in *Atascadero* should have left no doubt that we will conclude Congress intended to abrogate sovereign immunity *only* if its intention is *"unmistakably clear in the language of the statute."* [*Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) ]. Lest *Atascadero* be thought to contain any

ambiguity, we reaffirm today that in this area of the law, *evidence of congressional intent must be both unequivocal and textual.* Respondent's evidence is neither. In particular, we reject the approach of the Court of Appeals, according to which, "[w]hile the text of the federal legislation must bear evidence of such an intention, the legislative history may still be used as a resource in determining whether Congress' intention to lift the bar has been made sufficiently manifest." [*Muth v. Central Bucks School Dist.,*] 839 F.2d at 128. Legislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment. If Congress' intention is "unmistakably clear in the language of the statute," recourse to legislative history will be unnecessary; if Congress' intention is not unmistakably clear, recourse to legislative history will be futile, because by definition the rule of *Atascadero* will not be met.

*Dellmuth v. Muth,* 491 U.S. at 230, 109 S.Ct. at 2401 (emphasis added). The rule pronounced in *Atascadero* is the same rule at issue in this instant case, namely, that a waiver of sovereign immunity will only be found by a "clear and unambiguous" statement in the language of the statute. *See majority opinion ante* at 292. Accordingly, to meet the textual requirement for a waiver under the United States Supreme Court's clear statement test, the legislative history of a statute, *see Nordic Village,* — U.S. at —, 112 S.Ct. at 1016, the purpose of a statute, *see Ardestani,* 502 U.S. at —, 112 S.Ct. at 521, and even equitable considerations, *see id.,* are all irrelevant.

Notwithstanding the emphatic admonition by the United States Supreme Court to ignore non-textual evidence, the majority opinion in this instant case concludes that "costs" do not equal "fees" by an appeal to all non-textual sources. The text of the McCarran Amendment nowhere states that the term "fees" is excluded from the definition of "costs." To reach its conclusion the majority primarily relies on cases from oth-

er jurisdictions. *See ante* at 295–296. These cases do not purport to construe the term "costs" as it is used in 43 U.S.C. 666(a) and many of these opinions were decided long before the McCarran Amendment was enacted. *Id.* Where the Supreme Court has so clearly and emphatically limited the search for meaning to the text of the statute, the majority's attempt to use the definition of costs from other courts and in contexts outside the McCarran Amendment clearly runs afoul of the textual requirement articulated in *Nordic Village.*

In addition, notwithstanding the majority's historical background disclaimer, *see ante* at 296, the majority opinion in this instant case places subtle reliance on a Senate committee report accompanying the passage of McCarran Amendment. *See ante* at 296–297. As noted above, the United States Supreme Court specifically rejected committee reports as permissible considerations in determining the unequivocal words of a statute. *See Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1016. Moreover, the majority's reference to a report of the Western States Water Council, *ante* at 297, and its references to the filing fees provisions of the various western states at the time the McCarran Amendment was passed, *ante* at 295, are unacceptable considerations because they are not contained within the textual statutory provisions of the Amendment itself. While these considerations may be helpful in other contexts, the United States Supreme Court has emphatically stated that when interpreting whether Congress has eliminated sovereign immunity, the words contained within a statute are the only considerations that may be considered by a court. *Nordic Village,* at ——, 112 S.Ct. at 1016.

The underlying rationale supporting the exclusion of all nontextual evidence is that the words of the statute alone must provide unequivocal evidence that Congress intended to reject federal sovereign immunity. Paraphrasing what the Court stated in *Dellmuth,* if Congress' intention is "unequivocally expressed," *Nordic Village,* at ——, 112 S.Ct. at 1014 (quoting *Irwin v.*

*Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990)); *see also United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969), in the words of a statute, then recourse to legislative history or other nontextual evidence of abrogation will be unnecessary; if Congress' intention is not "unequivocally expressed" in the statute itself, then recourse to nontextual materials will be futile, because by definition the clear statement test for waivers of sovereign immunity will not be met. *See Dellmuth,* 491 U.S. at 230, 109 S.Ct. at 2401. By considering nontextual material in the instant case the majority fails to adhere to the first requirement of the United States Supreme Court's test. More importantly, by so doing, the majority opinion fails to recognize that the second requirement of the test, the unequivocal textual waiver requirement, is also not met by the text of the McCarran Amendment.

Under the unequivocal requirement, the United States Supreme Court has erected various rules of construction that weigh heavily against a statutory waiver. The Supreme Court's test does not merely attempt to give the words of the statute their best meaning. Instead the Court requires a search for an "unequivocal expression" in the language of the statute that leaves no doubt that the specific waiver in question "was affirmatively and separately contemplated by Congress." *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986).

While the language of the statute is obviously the starting point for its analysis, *see Ardestani v. INS,* 502 U.S. ——, ——, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991), the United States Supreme Court has employed various construction techniques which limit a finding of waiver. In *Nordic Village,* the Supreme Court employed a technique which it borrowed from its Eleventh Amendment cases that may be called the "alternate-interpretation" rule. Under this rule, the existence of any reasonable statutory interpretation that does not entail a

waiver of sovereign immunity is enough to illustrate that the statute is not an unequivocal expression of a federal waiver. This approach was employed in *Dellmuth v. Muth*, 491 U.S. at 231–32, 109 S.Ct. at 2402, and *Hoffman v. Connecticut*, 492 U.S. at 100–03, 109 S.Ct. at 2822–23, to ignore what were possibly the best interpretations of the statute, because other alternate interpretations existed.

In *Nordic Village* the Court used this approach when it entertained various alternate, hypothetical, constructions of the statute at issue. The Court did not suggest that these interpretations were necessarily correct. Rather its point was that because these interpretations were merely plausible, they demonstrated that the statute did not unequivocally waive the federal government's sovereign immunity. The Court concluded this unique approach to statutory interpretation with these words: "[t]he foregoing are assuredly not the only readings of subsection (c), but they are plausible ones—which is enough to establish that a reading imposing monetary liability on the Government is not unambiguous and therefore should not be adopted." *Nordic Village*, —— U.S. ——, 112 S.Ct. at 1016.

When there are doubts as to the unequivocal expressions of a statute the Supreme Court has resolved these doubts against a finding of waiver. The Court has noted that

> the traditional principle that the [Federal] Government's *consent* to be sued *"must be 'construed strictly in favor of the sovereign,'* McMahon v. United States, 342 U.S. 25, 27, [72 S.Ct. 17, 19, 96 L.Ed. 26] (1951), and *not 'enlarge[d] ...beyond what the language requires,'"* Ruckelhaus v. Sierra Club, 463 U.S. 680, 685, [103 S.Ct. 3274, 3278, 77 L.Ed.2d 938] (1983) (quoting *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686 [47 S.Ct. 289, 291, 71 L.Ed. 472] (1927)), [is] a rule of construction that we have had occasion to reaffirm once already this Term, see *Ardestani v. INS*, 502 U.S. ——, —— [112 S.Ct. 515, 520–21, 116 L.Ed.2d 496] (1991).

*Nordic Village*, —— U.S. at ——, 112 S.Ct. at 1015 (emphasis added.)

The Court's reference in *Nordic Village* to *Ardestani* instructive because in that case the United States Supreme Court appeared to recognize that its clear statement test accompanied by its strict rules of construction yielded a result at odds with the clearly defined purpose of the statute. Nevertheless, the Court rejected the petitioner's argument that the federal government had waived its immunity under the Equal Access to Justice Act (EAJA) for deportation proceedings. The Court stated:

> Finally, we consider Ardestani's argument that a functional interpretation of the EAJA is necessary in order to further the legislative goals underlying the statue. The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority.
>
> We have no doubt that the broad purposes of the EAJA would be served by making the statue applicable to deportation proceedings. We are mindful that the complexity of immigration procedures, and the enormity of the interests at stake, make legal representation in deportation proceedings especially important. We acknowledge that Ardestani has been forced to shoulder the financial and emotional burdens of a deportation hearing in which the position of the INS was determined not to be substantially justified. But we cannot extend the EAJA to administrative deportation proceedings when the plain language of the statue, coupled with the strict construction of waivers of sovereign immunity, constrain us to do otherwise.

*Ardestani*, 502 U.S. ——, ——, 112 S.Ct. 515, 521, 116 L.Ed.2d 496 (1991).

The Supreme Court has frankly stated that "[t]he purpose of the rule is to permit the Government to 'occupy an apparently favored position.'" *Library of Congress v. Shaw*, 478 U.S. at 315–16, 106 S.Ct. at 2962 (quoting *United States v. Verdier*,

164 U.S. 213, 219, 17 S.Ct. 42, 44, 41 L.Ed. 407 (1896)). Based on these strict and well established rules of construction, the search for an affirmative declaration demonstrating a unequivocal expression of statutory waiver in the instant case is difficult indeed. It is clear that nowhere does the McCarran Amendment indicate or suggest that the federal government has waived its sovereign immunity for the purpose of assessing filing fees against it. Rather, the statute merely states that the United States will "be deemed to have waived any right to plead that State laws are inapplicable" in a state water adjudication suit. The specific "State laws" referred to in 43 U.S.C. § 666(a) are nowhere mentioned. While the majority appears to conclude that the best interpretation of "State laws" is to find a waiver of sovereign immunity for all state laws involved in the water adjudication, including state laws requiring the payment of fees, this conclusion is not compatible with the two-part test required by the Supreme Court. The statute is capable of being construed as waiving sovereign immunity only to the extent of "State laws" which are necessary to the appropriation of water. Because the filing fee requirement is not necessary for determining who has a water right, this interpretation is at least "plausible." As a waiver of immunity is not to be "enlarge[d] ... beyond what the language requires," *Nordic Village,* — U.S. at —, 112 S.Ct. at 1014–15; *Ruckelhaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983) (quoting *Eastern Transp. Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)), a construction of the statute limiting the federal government's waiver should be applied.

Moreover, the specific portion of 43 U.S.C. § 666(a) limiting the federal government's waiver so "[t]hat no judgment of costs shall be entered against the United States" in water adjudication suits also leads to exactly the opposite inference as that drawn by the majority. While the majority labors valiantly to demonstrate the difference between costs and fees, it is also at least "plausible," to use the stan-

dard of *Nordic Village,* — U.S. —, 112 S.Ct. at 1016, that the term "costs" was meant to include the filing fees at issue in this case. Even the majority acknowledges that "[t]here is a tendency to confuse the terms fees and costs." *Ante* at 295. As a plausible statutory interpretation, the explicit reservation of sovereign immunity for costs should be "construed strictly in favor of the sovereign." *Nordic Village,* at —, 112 S.Ct. at 1014–15 (quoting *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951)).

The majority's holding rests in substantial part on its determination that Congress meant only to exclude "costs" but not "fees" from its waiver of sovereign immunity. While I appreciate the technical distinction attempted by the majority, a distinction which part III of the majority opinion reveals has never been made in Idaho until today, from the point of view of Congress a monetary charge by any name represents "costs" to the federal government. To expect Congress to have drawn a technical distinction between costs and fees when the majority recognizes that the two terms are "often used indiscriminately," *ante* at 295, is unrealistic in my view. Therefore, to construe the McCarran Amendment to merely forbid a waiver of "costs," and then allow a state to afterward enact laws imposing "fees," will only invite verbal manipulations by states aimed at avoiding federal sovereign immunity.

The majority recognizes that the textual and unequivocal requirements of *Nordic Village* present the proper analysis for this case. *See ante* at 291. Nevertheless, it refuses to follow the United States Supreme Court's analysis and holding because it will lead to a "pre-ordained result." *See ante* at 294.

Under this Court's construction of the McCarran Amendment, the state now has no limit on the fees it can charge the federal government in this adjudication. The federal government cannot avoid being joined in this adjudication because of the McCarran Amendment, and multiplying the potential fee exposure by all the states subject to the McCarran Amendment, it is

readily apparent why the United States Supreme Court is so concerned about limiting statutory waivers in all cases solely to those areas that were obviously contemplated by Congress.

Notwithstanding these concerns, the majority indicates that if it held otherwise, the "United States would effectively control the adjudication." *Ante* at 294. While apparently forgetting whose laws control and which sovereign is waiving its immunity, the majority allows the state to control not only the adjudication, but also how much the United States must pay for the privilege of adjudicating what state law cannot ·take away without its express consent. While my heart is with the majority, a reading of the McCarran Amendment and the United States Supreme Court cases addressing the sovereign immunity waiver issue will not lead to that result.

Because it is clear under the United States Supreme Court's cases that the McCarran Amendment does not provide an unequivocal statutory waiver of sovereign immunity for filing fees, I respectfully dissent.